BELLA ROSS *vs.* PEARSON CORDAGE COMPANY.

Suffolk.     May 24, 1895. — September 6, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Breach of Duty.*

Where a person is injured by the sudden starting of a machine which he is cleaning, if there is no defect in the machine, and it does not differ from similar machines in use elsewhere, and is in the same condition as it was when he entered upon his employment, the mere fact that certain contrivances, if on the machine, might have prevented its starting, is not sufficient to show a breach of duty on the part of his employer.

TORT, for personal injuries occasioned to the plaintiff while in the employ of the defendant. The declaration contained three counts, one at common law and the other two under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Sherman*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff testified that in ʼJune, 1893, she was employed by the defendant to tend a machine known as a drawing frame, in its factory, used in preparing material for making cordage;

that she had been in the employ of the defendant five or six weeks at the time of her injury ; that she had been directed by the foreman of the room in which she worked to clean the machine tended by her whenever the same was stopped ; that she had never been instructed by the defendant, or any of its agents, that there was any danger in so doing, or that the machine might start without any notice to her while she was thus engaged in·cleaning it ; that she had no knowledge of any such danger until she was injured ; that she had been employed at what is called the feed end of the machine, and that it was her business to see that hemp passed into and through the machine ; that there was another girl named Kate Farrell, who was employed at what is called the delivery end of the machine, and her business was to receive the material as it passed through the machine and to coil it into cans and to start and stop the machine ; that the machine was started and stopped by means of a lever, at the opposite end of the machine to that where the plaintiff was at work, which extended about eighteen inches from the machine ; that by means of this lever the belt was moved·to and from the loose pulley to the fixed pulley of the machine ; that usually there was a rope which came from above on to the feed end of the machine, where the plaintiff was at work, by which a person employed at that end˙of the machine could stop it ; that at the time the plaintiff was injured there was no such rope to the machine she was tending ; that in the afternoon of July 1, 1893, the machine which the plaintiff was tending was stopped temporarily by Kate Farrell, who then left the room ; that while the plaintiff was at work cleaning the same from dust and fibre, which continually accumulated in the gearing from the material used in making cordage, it suddenly started up, without any notice to her, and her left hand was caught in the machine, and she received the injuries complained of ; that the plaintiff was facing and had a view of the machine, and she did not see any person approach or start it ; and that she was not looking around, but was just cleaning up the machine.

On cross-examination, the plaintiff testified that, at the time of the injury, she was about nineteen years of age ; that she saw Kate Farrell stop the machine and leave the room, and

supposed she would return in a few minutes; that she immediately began to clean it; and that she had her hands inside of the machine, that is, she was cleaning the pan down by the side of the machine right over the cogs.   The plaintiff also testified as follows:

" *Q.* Now, did not Kate Farrell go out of the room and stop her machine?  *A.* Yes, sir.

" *Q.* And did not she come back and start up her machine before you were hurt?  *A.* Yes, sir.

" *Q.* Are you sure about that?  *A.* Yes, sir.

" *Q.* Do you swear positively that Kate Farrell's machine was not running when you were hurt?  *A.* Yes, sir, I am sure it was.  I know it was started before I was hurt."

The plaintiff further testified that the machine was in the same condition at the time of her injury as when she entered the service of the defendant.

Isaac S. Craig, a witness in behalf of the plaintiff, testified that he had been a machinist for thirty-two years, and was acquainted with all kinds of machinery generally; that, in company with the plaintiff and her counsel, he visited the defendant's factory a few weeks after the time the plaintiff was injured, and examined the machine that was pointed out by her as the machine by which she was injured; that the machine was six or eight feet long, about three feet high in the back part and a little higher in the front, and about three feet wide; that the machine was started and stopped by what is called a belt shipper, which was an ordinary shipper, such as is used to throw a belt over from a tight to a loose pulley; that it was two feet long, with nothing to hold it in its place, except that it was pivoted in the centre; that the machine was stopped by simply moving the lever, by which the belt was thrown from the tight to the loose pulley, and the reverse movement to start the machine; that, in the proper construction of such a machine, such levers are not ordinarily locked, or clamped, unless the machine has some special danger; that a machine which required two persons to operate it, one at the end where the shipper is and one at the other end, would make it necessary that there should be something to secure it; that a simple latch would secure it from allowing the belt to run on; that machines

sometimes started by means of the belt getting a little twisted and spreading on one side, which makes it liable to run on the fixed pulley from the loose pulley; that this will be done if a shaft tips, or the belts are improperly adjusted for height; that this would be prevented by having the shifting bar latched or locked; and that it would also prevent the machine being started by any one striking against it.

On cross-examination, he testified that the shipper was like the ordinary shipper, such as is used on ordinary machines; that there was nothing unusual about it; that it was made in the ordinary way for the use of that class of machines; and that he did not see any defect in it.

Kate Farrell, a witness called by the defendant, testified that, shortly before the accident, she stopped her machine and went into the wash-room, after informing the plaintiff that she would return in a few minutes; that she returned to her machine in a few minutes and put it in motion; that it had been running continuously for several minutes just before and until shortly after the plaintiff was injured; and that she did not see the plaintiff cleaning her machine.

The defendant requested the judge to rule that, upon all the evidence, the action could not be maintained. The judge so ruled, and directed the jury to return a verdict for the defendant. If there was any sufficient evidence upon which the jury could have found for the plaintiff, a new trial was to be ordered; otherwise, judgment was to be entered upon the verdict.

*H. P. Harriman & F. J. Daggett*, for the plaintiff.

*C. Reno*, for the defendant.

LATHROP, J. The plaintiff, a girl nineteen years of age, was injured by having her hand caught in the cogs of a machine called a drawing frame, which she was cleaning. We assume in her favor that there was evidence for the jury that the machine started without its having been set in motion by a fellow servant.

The remaining question is, therefore, whether there was any evidence which would warrant the jury in finding any breach of duty on the part of the defendant. The evidence as to the machine comes from an expert who was a witness for the

plaintiff.   He testified that the machine was started and stopped by what is called a belt shipper, such as is used to throw a belt from a tight to a loose pulley ; that the machine was stopped by simply moving the lever by which the belt was thrown from the tight to the loose pulley, and the reverse movement to start the machine; that the shipper was two feet long, with nothing to hold it in its place except that it was pivoted in the centre ; that in the proper construction of such a machine such levers are not ordinarily locked, or clamped, unless the machine has some special danger; that a machine which required two persons to operate it, one at the end where the shipper is and one at the other end, would make it necessary that there should be something to secure it; that a simple latch would secure it from allowing the belt to run on ; that machines sometimes started by means of the belt getting a little twisted and spreading on one side, which is liable to run on the fixed pulley from the loose pulley; that this will be done if a shaft tips, or the belts are improperly adjusted for height; that this would be prevented by having the shifting bar latched or locked; and that this would also prevent the machine being started by any one striking against it.   He further testified that the shipper was like the ordinary shipper, such as is used on an ordinary machine ; that there was nothing unusual about it; that it was made in the ordinary way; and that he did not see any defect in it.

There is certainly nothing in this evidence, with the exception, perhaps, of a single sentence, which tends to show any breach of duty on the part of the defendant.   There is nothing in the case to show  that there was any special danger in the machine, or that the shaft tipped, or that the belt was improperly adjusted, or that the belt had got twisted and spread on one side.   It is true that the expert testified " that a machine which required two persons to operate it, one at the end where the shipper is and one at the other end, would make it necessary that there should be something to secure it."   He however gave no reason for this opinion, and we can conceive of none, except that the one near the shipper might accidentally strike against it.   But we assume that there was no one in the room with the plaintiff at the time.

The machine had been stopped before the accident by a fellow servant ; and it is obvious that, if the belt had not been entirely removed from the tight pulley to the loose one, there would be danger of the belt working on to the tight pulley and starting the machine.     See *Dingley* v. *Star Knitting Co.* 134 N. Y. 552: The machine was in the same condition at the time of the accident as it was when the plaintiff entered the defendant's employ.     There is no evidence that there was any defect in it, or that it differed from similar machines in use elsewhere. The mere fact that certain contrivances, if on the machine, might have prevented its starting, is not enough to charge the defendant; and we see no evidence to warrant the jury in finding that there was any breach of duty on the part of the defendant.

In *Donahue* v. *Drown,* 154 Mass. 21, there was evidence that the machine was not put up properly; that the driving pulley upon the main shaft had a convex surface instead of a flat surface, such as it should have had, and was so fixed with reference to the fixed pulley that the tendency was to draw the belt from the loose pulley when the machine was not in motion on to the fixed pulley, and thus to start the machine.     There was also evidence that other similar machines in the defendant's factory had previously started without being intentionally set in motion, so that the defendant might by the exercise of reasonable care have known the fact of the starting, and have remedied the defects.     The case in these respects differs widely from the one at bar.

In *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, the plaintiff was injured by the automatic starting of a carriage connected with a sawing machine.     It was undisputed that a machine which would so start was improperly constructed or adjusted.     The machine had three days before the accident started automatically, and this was known to the defendant's foreman, who told the plaintiff before the accident that it had been repaired.     Under these circumstances it was held that the jury were warranted in finding that the defendant was negligent.

In *Connors* v. *Durite Manuf. Co.* 156 Mass. 163, the plaintiff was injured by the starting of a stationary engine caused by a leak in the throttle valve.     The engine was an old one when bought by

the defendant, and he had caused it to be repaired, but nothing was done to the throttle value. There was also evidence that the wear and tear which would produce the condition of things which caused the defendant to have the engine repaired would tend to cause a leaky throttle valve. It was held that the question of the defendant's negligence was for the jury.

The two cases last cited differ widely from the one at bar.

*Judgment for the defendant.*