WILLIAM FLAHERTY vs. NORWOOD ENGINEERING COMPANY.

Hampshire.    September 20, 1898. — October 21, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND; JJ.

*Personal Injuries — Master and Servant — Action — Law and Fact.*

A., who was employed in an iron foundry as a moulder, was ordered with others to assist in pouring melted iron into a mould for a very large casting. The men stood on a platform two feet high built near the mould. The ladle, which was swung into position over the mould by a derrick, contained about two and one half tons of melted iron, which filled it more than one half. The arms of the ladle were attached a few inches below the centre of gravity, and a common round stick, furnished by the superintendent, without holes in it, was used as a lever, being placed over one handle and under the other handle of the arm on one side. This ladle was used infrequently, and A. had never seen it before. When the order was given to pour, the men began to tip the ladle, which overturned suddenly, emptying its contents on the floor, and the men jumped from the platform, and in the struggle to escape A. was thrown into the hot iron and injured. *Held*, in an action against his employer for his injury, that the case was rightly submitted to the jury.

TORT, for personal injuries sustained by the plaintiff, while employed in the defendant's iron foundry as a moulder, through the alleged negligence of the defendant. The declaration contained two counts, one at common law and the other under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Wardwell*, J., who allowed a bill of exceptions, in substance as follows.

The evidence tended to show the following facts. The plaintiff had been a moulder about twenty years, and had worked for the defendant about four or five months. For about a week before the accident, which occurred on December 14, 1895, two other employees, Healy and Knight, were working on and preparing to make an unusually large casting, with which the plaintiff had nothing to do. His work was on "light work" in another part of the room. This casting was to be made in the usual mould, which is prepared with a pattern, sand, etc. The flask containing the mould was made in halves to fit perfectly with each other, and fastened together with pins or clamps on the outside. On the top of the flask a pouring basin eight inches

deep was made with sand, from which basin one or two holes were made to the mould, through which the molten iron was to run from the basin into the mould. The flask when closed was about eight feet long, five feet wide, and four feet high. About fifteen feet from this flask in the same room was a stack or furnace from which the melted iron was taken for use in the foundry.

On this occasion an unusually large ladle was used, as the casting was to be very large. The ladle was about three and one half feet wide and three and three fourths feet high. The pot was circular in shape, and the ladle had two arms, which were permanently riveted to the pot. The bail or handle of the ladle was loosely attached to the arms close to the pot to enable the pot to be tipped from top to bottom, and when in use the upper part of the bail was attached to a derrick or crane. To make this particular casting it was necessary to change the bail from semicircular to square, so that the ladle could be raised sufficiently high to pour into the flask. On one side of the pot there was a peculiar lip through which the molten iron was intended to pass. On the bottom of the pot of the ladle on the opposite side from the lip there was a hook, attached to which was a chain, which was also attached to the joists of the floor above. This chain was used with a differential block. The derrick used to raise the ladle had two handles, and a man was stationed at each handle. Each arm of the ladle had two handles or shanks. The arms are the axis upon which the ladle is turned and moved when in use. On this particular ladle the arms were attached five inches below the centre of the pot, or the ladle was "hung" five inches below the centre of gravity. The ladle was set on the floor beside the flask, and men filled it with melted iron by taking the iron from the furnace in a small ladle and dumping it into the large one until it was from one half to two thirds full. There were nearly two and one half tons of metal in it. It was then attached by the bail to the derrick, and hoisted about four feet into place over the flask, and there left suspended while the men were being called to tip it into position for pouring. There was a platform about two feet high near the flask intended for the men to stand upon.

William A. Stevenson, superintendent of the works, and John E. Witherell, foreman of the room, neither of whom worked with

his hands, were both present and had charge of the work. Other men in the room, the plaintiff included, were ordered to come and assist in pouring from this ladle. The plaintiff with others responded, and he took the place assigned him on the platform. A common round stick, the stopping stick used for another and different purpose, was placed by the superintendent upon the handles at the end of one of the arms of the ladle, to be used as a lever. No instructions as to how this stick should be used were given by any one. The stick was over one shank and under the other, and had no holes in it. While the ladle was thus standing suspended men took hold of the handles, and five men, including the plaintiff, went to the arm of the ladle which had the stick, and by means of the stick they gradually tipped the ladle from perpendicular to an angle where the metal was near the lip preparatory to letting it pour out. When ready, some one gave the order to pour. The men began to tip the ladle more, and suddenly the ladle tipped over, bottom end up, and emptied its contents over the bare floor. The intense heat of this great mass cracked window glass and set the building on fire. The instant the ladle tipped over all the men who could do so ran away. The superintendent and foreman, with others, ran out of the building. The plaintiff jumped from the platform with the rest, and in doing so he came in contact with some others who were attempting to escape, and he was thrown into the hot iron, and received the injuries complained of.

The plaintiff had never seen the ladle before the time of the injury, and he did not know that there was anything wrong with the ladle or lever. This ladle was made by order of Stevenson, the superintendent, who was not a practical moulder. He testified as follows: "I gave orders how it was to be made. Mr. Witherell had his ideas and I had mine, and between us and the foreman of the machine shop we had it made."

The plaintiff testified in relation to the accident as follows: "I stood on the platform and took hold of the lever and helped get the ladle into position. . . . I had hold of the lever and assisted in getting it into position so we could turn the iron into the mould. We got the ladle into position, and as soon as it was in position it hung there for a second or so, and Knight said to one of the men on the other end of the lever that if we did n't

pour it soon the iron would freeze, and Mr. Stevenson said, 'Go ahead, then.' Then we started to pour the iron into the mould, and as soon as that went in, that is, into the basin that receives the iron, she tipped right over. The first I heard then was Healey said, ' She is going,' and I tried to escape ; in fact we all jumped, and some of the men in the struggle knocked me on the shoulder and threw me into the iron."

Several witnesses for the plaintiff testified that the ladle was dangerous and unfit for use, because the arms were attached below the centre of gravity ; and witnesses for the defendant testified to the contrary.

The plaintiff testified that the order to pour was given by the superintendent, who denied it. Another witness testified that the foreman gave the order. Two other witnesses testified that " somebody gave the order to pour " ; and still another witness testified that the order was given by Knight. There was also testimony to the effect that the lever used was not a proper one ; and that the modern custom in foundries was to have a gear attached to a shaft and a " worm " for tipping large ladles, and a lever with two holes in it to fit on each one of the shanks.

The plaintiff testified that this ladle had not been used before while he was there. The defendant's superintendent testified as follows : " The ladle had been used before since I had been there, always with more iron in it than it had this time. We considered it a safe and suitable ladle. We had no trouble with it before. We used it in the same manner before that it was used this time. We were using it that way all the time I was there. It was more safe with the half load than when it was full. . . . This lever was for no other purpose than a brake. This ladle was only used as we had an order for a piece that required that sized ladle."

Another witness, who had worked for the defendant eight years, testified that he had seen this ladle used two or three times during that period with more in it than on this occasion ; and that " on the first occasion the pouring was done in the same way," and " this system had been used right along with the ladle in that foundry."

After the testimony was all in, the defendant requested a ruling that there was no sufficient evidence to entitle the plaintiff to

have the case submitted to the jury.    This request was refused; and the defendant excepted.

The defendant asked the judge to instruct the jury that, " if the plaintiff would not have received the burns if he had remained on the platform where he was standing to assist in operating the lever, and if he received the burns because he fell, or was pushed or thrown to the ground in running away from his said post, the defendant is not responsible for the burns he received by his being so on the ground."

The judge declined to give this instruction, and instructed the jury, in substance, that the plaintiff's act in leaving the platform was for them to consider, with all the other evidence in the case, as bearing on the question of the plaintiff's care; that it was for them to say whether, under all the circumstances that surrounded the plaintiff, there was any lack of due care on his part in leaving the platform which contributed to his injury; that, if there was such lack of due care, the plaintiff was not entitled to recover; and that he must show affirmatively that he was using proper care in this as in all other respects; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. G. Bassett & J. M. B. Churchill,* for the defendant.

*J. B. O'Donnell,* for the plaintiff.

HAMMOND, J.    Considering among other things shown by the evidence the dangerous character of the molten iron, what was to be done with it, the nature of the appliances to be used in handling it, the infrequency of their use, the degree of knowledge of the plaintiff and the general scope of his duties, we are of opinion that the questions whether the plaintiff was in the exercise of due care, whether the appliances were reasonably safe and proper, whether there was any negligence on the part of the defendant as to those appliances, and whether the plaintiff knew and appreciated, or ought to have known and appreciated the danger, were all questions of fact for the jury.

*Exceptions overruled.*