DENNIS O'BRIEN *vs.* NEW YORK, NEW HAVEN, AND
HARTFORD RAILROAD COMPANY.

Suffolk.    November 12, 1901. — February 25, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Negligence,* Contributory, by employee of railroad company.

In an action by a freight brakeman against the railroad company employing him,
for injuries caused by the brake which he was using slipping on the staff and
giving way so as to cause him to fall by its want of resistance, it appeared by
the plaintiff's witnesses, that if a wheel was loose on the staff this would be
indicated to a brakeman using it by the chucking of the wheel while the slack
of the chain was being taken up and before the brakeman had to throw his
weight upon the wheel. *Held,* that if it was true, as contended by the plain-
tiff, that the wheel slipped on the staff, the plaintiff by the exercise of due care
would have found it out while getting in the slack of the chain and when no
harm could have come from it, and that a verdict rightly was ordered for the
defendant.

TORT, at common law, by a freight brakeman against the
railroad company employing him for injuries alleged to have
been caused by the defective condition of the brake wheel and
part of the brake gearing which the plaintiff was using, with
another count under the employers' liability act alleging a
defect in the ways, works and machinery used in the business
of the defendant.    Writ dated January 9, 1899.

At the trial in the Superior Court, *Sherman,* J. ordered a
verdict for the defendant, and, by agreement of counsel, reported
the case for the consideration of this court.    If the verdict was
ordered properly, judgment was to be entered for the defendant.
If upon all the evidence the case should have been submitted to
the jury, judgment was to be entered for the plaintiff in the sum
of $5,500.

*S. A. Fuller,* for the plaintiff.

*C. F. Choate, Jr.,* for the defendant.

LORING, J.    We are of opinion that the presiding judge was
right in directing a verdict for the defendant.

The plaintiff testified that he was injured shortly after mid-
night on March 30, 1898; at the time, he was employed by the
defendant as a freight brakeman; while the freight train on

which he was employed was delivering and taking up freight cars at a way station, the plaintiff was directed by the conductor of the ·train to take care of three box cars which had been "kicked" by the engine on to a side track; as the cars went by him, the plaintiff, in pursuance of this order, boarded the head car, climbed to the top of it, and undertook to stop all three cars by setting up the brake on that one.  He did this to "save going back over the cars," as it was raining hard, it was dark, and he was not used to the yard at that station; he had been working for the defendant for ten days only.  He stood with both feet on a step twelve to sixteen inches below the top of the car; this step held the ratchet and dog of the brake; it was put there to stand on in setting up the brake.  He had one foot against the dog, and that worked "all right"; he put his lantern on the running board of the car; he pulled on the brake wheel six or eight times, turning it around entirely four to six times before he "got the slack of the chain in good shape"; he then swung around again, putting his full weight and strength on the wheel.  The brake wheel "gave way on the staff . . . the wheel slipped on the staff," his hip struck the end of the car on the right side, and he fell, striking on his face between the rails; as soon as he touched the ground the car struck him.  The plaintiff had been employed as a brakeman by other railroads for six years and a half; at the time of the accident he weighed two hundred and five pounds and was twenty-nine years of age.  The car was one of the defendant's cars.  He testified that he did not look at the brake before using it, and that he did not see the wheel turn on the staff, and that he did not see anything the matter with the brake or the staff.  He also testified that if he knew that a brake wheel slipped around, he looked out for it; that in that case he "did n't go near" it.

Besides his own testimony, the plaintiff introduced that of two other brakemen.  One testified that in eighteen years' experience he had met with wheels which slipped around the staff "many a time."  The other, Whitney by name, testified that where the brake wheel joins the staff, each of them is on the square; that in using the corners these squares get worn; that is to say, sometimes the corner of the square of the wheel gets worn, sometimes that of the staff, and sometimes both; and eventually

the wheel will slip on the staff; that it takes years to wear off the squares so that a wheel will slip round. He further testified, on direct examination, that to find out whether a wheel is worn so that it will slip, "you take the nut from the top and take the wheel off, and look at your staff. That is the only way you can notice. And another way you might notice it, by working your wheel. As you catch hold of the wheel, sometimes it will chuck. That shows that it is worn on the staff or on the wheel." On cross-examination, he testified that in his ten years' experience he had come across as many as a thousand wheels that turned on the staff; and in answer to the question, "You can always tell them all the same way?" he answered, "By the chuck of the wheel"; and "as soon as you take hold of it you can't tell it; until you get the slack of your chain up."

The defendant introduced the testimony of the conductor and of one of the crew of the freight train in question; also that of a car inspector, who made an inspection of this car, three hours after the accident, and of the foreman of the car shops where this car was overhauled a month and a half later. Besides contradicting the evidence of the plaintiff in some respects which are not now material, the defendant's testimony showed that immediately after the accident it was found by actual trial that the wheel did not turn on the staff, and that the nut holding the wheel in place was on and was screwed down tight. In addition, the defendant's evidence showed more in detail what the construction of the brake wheel and staff is; it showed that the top of the staff is square, excepting the very end; on the very end, a thread is cut for the nut which holds the wheel on the staff; the square part of the staff tapers up in size, being smaller at the top; the hole of the wheel, which fits on the staff, is also square and tapers in size as the staff does. It appeared that the nut keeps the wheel hard down on the staff, and that, in fact, there is no play between the two, when the wheel is in use, and that the corners do not get worn in use, and that the wheels do not turn on the staff, unless the nut is loose or the washer between the nut and the wheel is worn..

The contention of the defendant was that either there was a kink in the chain or that the chain wound around over itself as the slack was taken up, and slipped off when the plaintiff put

on the last turn of the wheel, or that his hands slipped on the wheel, either of which might have happened, particularly as it was raining hard at the time.

The plaintiff in this court has argued his case on the footing that the nut was screwed down tight, and there is nothing to show that the plaintiff made a different contention in the court below. Therefore the case must be disposed of on the footing that the nut was screwed down tight. If the nut was screwed down tight and yet the squares of the staff or of the wheel, or either, were so worn that the wheel would slip on the staff, it is inconceivable that the wheel would not work somewhat, while the slack of the chain was being taken up and before the weight of the brakeman was thrown on to the wheel. That is to say, the fact that the wheel was loose on the staff must have been known at a time when no harm would have come to the plaintiff, if the wheel had, in the language of his own witness, "chucked." Moreover, direct evidence of that was put in by the plaintiff. On a fair consideration of the whole testimony of the plaintiff's witness Whitney, we think that he must be taken to have testified that " You can always tell when the squares are worn by the chuck of the wheel " ; and that " you can always tell whether that is so or not by the time you have got the slack of the chain taken up."

The result is that, if the plaintiff's statement is true that the wheel and not the chain slipped on the staff, he would have found it out while getting in the slack of the chain, had he been in the exercise of due care ; and therefore he cannot recover.

The result would not have been changed had the plaintiff wished to go to the jury on the ground that the wheel slipped because the nut was loose ; in that case also the plaintiff, if he had exercised due care, must have become aware that the wheel was loose while he was taking up the slack of the chain.

*Judgment on the verdict.*