EVERETT A. LITTLE *vs.* HYDE PARK ELECTRIC LIGHT COMPANY.

Norfolk. March 14, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.

In an action by a lamp trimmer against an electric light company by which he was employed, for injuries caused by his falling from a pole of the defendant owing to the coming out of a spike or step when grasped by the plaintiff in climbing the pole, it appeared that the plaintiff had been in the defendant's employ as a lamp trimmer for eleven years and that it was his duty to climb one hundred and thirty-nine poles belonging to the defendant, one half of them each day, except on moonlight nights, and that, when not trimming lamps because there was a moon, he worked as a lineman in making repairs, including the taking down and setting up of poles, and in doing so had seen holes bored for spikes and new spikes put into poles. A clerk of the defendant called as a witness by the plaintiff enumerated the employees of the defendant and there seemed to be no one except the lamp trimmer employed to ascertain what repairs on poles were needed. The plaintiff in testifying admitted that "steps getting loose was not an infrequent occurrence" during the time of his employment, and that he supposed that he "would tell a step was loose by the feeling of it" when he took hold of it. *Held,* that a verdict rightly was ordered for the defendant, as it appeared that the plaintiff was not in the exercise of due care in throwing his weight on the step without first ascertaining that it was not loose.

TORT by a lamp trimmer against an electric light company by which he was employed, for injuries caused by his falling from a pole of the defendant at the corner of Maple Street and Pine Street in Hyde Park, owing to a step, consisting of a spike

driven into the pole, coming out when grasped by the plaintiff in climbing the pole.   Writ dated December 20, 1900.

In the Superior Court the case was tried before *De Courcy*, J. A teamster who saw the accident described it as follows:

" The plaintiff was twelve or fifteen feet up the pole when he fell; before he fell he was going up the pole; he stepped out of the wagon on to the lower step of the pole and reached around with his right hand to pull himself up on to the next step, and then his left hand up on the next step was what pulled out.   He stepped out of the wagon and put his left foot on the lower step then reached around with his right hand on the other side of the pole, and that pulled him on to that, and his other foot goes on a step on the other side, then he reaches with this to pull up and that is when he fell, it was the third step, I think, the third step from where he started, the second step on the left hand side of the pole."

The plaintiff himself described the accident as follows:

" On the day of the accident I started to go up one of the defendant's poles located at the junction of Maple and Pine Streets, between eleven and twelve o'clock in the morning; I was going up from one step to the other, one hand and one foot on each side of the pole.   The steps were about three feet apart.   I do not know how far up the pole I went.   I remember stepping on the lower step about eight feet from the ground, and putting my other foot on the next step.   My hands were going up the steps from step to step, one at a time, the same as my feet.   After that I have no recollection of anything until the next day."

The evidence relating to the due care of the plaintiff is stated in the opinion.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. E. Cotter & C. Reno*, (*J. P. Fagan* with them,) for the plaintiff.

*D. E. Hall*, for the defendant.

LORING, J.   The plaintiff's case was that the spike in question was not a suitable spike for the purpose for which it was used, and that it was not properly driven into the pole.

But in testifying that the superintendent promised a year before the accident to take out all driven spikes and substitute

screw spikes, the plaintiff admitted that he knew that driven spikes were then in the poles. It is true that he did not admit that he knew that driven spikes of the kind in question were in use, and there was evidence that they were more dangerous than bevelled driven spikes. But he admitted in terms that "steps getting loose was not an infrequent occurrence during the time of my employment," and "I would tell a step was loose by the feeling of it when I took hold of it, I suppose."

The rest of the evidence touching on the plaintiff's due care is as follows:

. The plaintiff had been in the defendant's employ as a lamp trimmer for eleven years. As such it was his duty to climb one half of the one hundred and thirty-nine poles belonging to the defendant, one half of them each day, except on moonlight nights, and on those every three to five days. When the plaintiff's time was not wholly taken up trimming the lamps because there was a moon, he worked as a lineman in making repairs, including the taking down and setting up of poles. In that connection he had seen holes bored for spikes and new spikes put into poles, although in his testimony he did not admit that he personally had bored more than one hole for the driving of a spike, or had driven more than the one spike for which he had bored the hole. He testified that it was his duty to make a daily report on a blank furnished by the defendant for the purpose, and that one of the headings on this blank was: "The following repairs are needed on the circuit." He also testified that it was his duty to put upon that blank anything that might be seen to be needing repairs. He further testified that if he found a pole where a step was loose which he could not repair himself (although he did not think he ever had been told to do it) he thought he ought to report it and he did report it.

One of the plaintiff's witnesses, who had been assistant superintendent but had left the company's employ four years before the accident,. testified that the plaintiff "was not supposed to look and see, or to test them [the steps] to see whether they were loose or not. The foreman or some one in that capacity is supposed to know how his poles are." But in the enumeration of the employees made by a clerk, another of the plaintiff's witnesses who was in the defendant's employ in 1900, there did not

seem to be any one but the lamp trimmer employed to ascertain what things needed repair.

Under these circumstances the plaintiff was not in the exercise of due care in throwing his weight on the step in question without seeing that it was not loose. The case is not unlike *O'Brien* v. *New York, New Haven, & Hartford Railroad*, 180 Mass. 403.

The plaintiff relies on *Chisholm* v. *New England Telephone & Telegraph Co.* 185 Mass. 82. The difference between the two cases is that in that case there was no evidence that the pin in question was loose, or that pins getting loose was not an infrequent occurrence. For a similar reason *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159, is not like the case at bar. There the plaintiff had no duty to look for a defective rung, or to suppose that the rung in question was not safe.

*Exceptions overruled.*