PATRICK J. CURTIN, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.  January 7, 8, 1907. — February 27, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.  Street Railway.  Evidence.*

In an action by an administrator against a street railway company for the death and conscious suffering of the plaintiff's intestate while employed as a conductor on a car of the defendant from being crushed between two cars, it appeared that the car of which the intestate was conductor had stopped very near the

other car, which was standing still, for the purpose of shifting the ends and running it out in the opposite direction, that the motorman had taken his controller handles and shifted ends and the intestate had swung his trolley around and was trying to adjust it, and in attempting to do so stepped upon the fender of the adjacent car, the motorman of which standing upon the platform took hold of the trolley rope with both hands to assist him, when the adjacent car suddenly started and the plaintiff was crushed between the cars. The motorman who was trying to assist the plaintiff testified that he did not know the cause of the accident, that he did not know whether his car moved or not, that he did not touch the controller handle of his car and that immediately after the accident the handle was in the same position that it was when he stopped the car. He further testified that before the accident the car had made no sudden starts and that after the accident it went " perfectly properly " to its destination and was in first class condition. An expert testified that a car could be started by a short circuit, which exists where there is a leak, that he never had seen a car started by a short circuit, and that he had heard of cars starting of their own accord but could find no evidence of a short circuit in them. The presiding judge ordered a verdict for the defendant. *Held*, that the verdict was ordered properly ; that, assuming that the jury could have found that the car started of itself, and assuming also that such starting would be evidence of a defect, there was no evidence of negligence on the part of the defendant in failing to discover a defect if there was one.

If a person is injured by the sudden starting of an electric car, where the cause of the starting is wholly a matter of conjecture and it might have occurred without fault or negligence on the part of the company operating the car, the doctrine of *res ipsa loquitur* has no application.

TORT by the administrator of the estate of John F. Curtin, a conductor in the employ of the defendant, to recover for his death and conscious suffering from being crushed between two cars of the defendant on April 10, 1901, with counts under the employers' liability act and at common law. Writ dated October 21, 1901.

At the trial in the Superior Court before *White*, J. it appeared that the deceased, John F. Curtin, was the conductor on a special car which had been waiting on a spur track; that at the time of the accident the motorman on Curtin's car ran the car out upon the main track far enough to clear the switch, stopped his car close to another car operated by one Blute as motorman, which was standing there waiting for it to come out, took his controller handles and " shifted ends "; that Curtin swung his trolley around and tried to adjust it, that the bonnet of his own car shaded the wire overhead and it was " a pretty stiff kind of trolley," so that he went in between the cars and finally stepped upon the fender of the rear car, trying to put on his trolley; that the motorman Blute, standing on the platform

of the rear car, took hold of the trolley rope with both hands to assist Curtin, and while they were working with the rope the rear car suddenly started, and fatally crushed Curtin between the two bumpers.

Blute had been in the employ of the defendant and its predecessors for over eighteen years, and had been a motorman for nine years. He testified that he did not know whether his car moved or not, and that, of his own knowledge, he did not know any reason for this accident occurring. He testified further that up to the time of the accident there had been no sudden starts of the car; that he continued on it as motorman after the accident, and that it went " perfectly properly " to its destination; that, from the knowledge he had gained in his nine years' experience as motorman, the controller and everything about the car was in first class condition; that immediately before the accident his car had been at a standstill for about a minute, and that his brake was on and his power off; that he was leaning forward with both hands on Curtin's trolley rope, trying to assist him, when he heard him cry out; that, as he stood in the centre of the platform, the brake would be at his right and the controller box at his left hand; that the brake handle is left toward you, and that by leaning against it the brake might be loosened; that, if you start the controller handle, it will take the whole notch and start the car. He testified, further, that he was sure he did not touch the controller handle, and that the controller handle immediately after the accident was where he left it at the time he stopped the car, and " set right where it ought to be."

One O'Brien testified that Blute's car had been perfectly still for a minute and a half or two minutes, and that the car jumped when Blute leaned forward and took hold of the trolley rope.

One Donnelly, the proprietor of a steam laundry, who formerly had worked for the South Middlesex Street Railway Company, testified there were three ways in which a car could be started, — by turning on the power, letting go the brake on a grade, and by a short circuit; that a short circuit exists where there is a leak; that he never had seen a car started by a short circuit; that he never had heard a short circuit described by an accurate electrician which in his mind, as an expert, was accountable for the starting of a car; that he had heard of cars

starting of their own accord, but could find no evidence of a short circuit in them; that, if a short circuit took place, it would be apt to blow the fuse, and certainly would be apparent to a competent inspector.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*E. A. Whitman & J. T. Pugh*, for the plaintiff.

*E. P. Saltonstall*, (*S. H. E. Freund* with him,) for the defendant.

MORTON, J.   Whether the plaintiff's intestate was in the exercise of due care or not, in standing on the fender to adjust the trolley, was clearly, we think, a question for the jury, as was also, we think, the question whether the motorman accidentally touched the controller or the brake as he was assisting the plaintiff's intestate, and thereby caused the car to start.   The motorman testified that he was positive that he did not touch the controller and the jury could have found that the car started in some other way, though the more reasonable explanation would seem to have been that the car was started inadvertently by the motorman as he leaned forward to take hold of the trolley rope to assist the plaintiff's intestate.   We also assume in favor of the plaintiff that if the car started of itself it would be some evidence of a defect.   But we see no evidence of negligence on the part of the defendant in failing to discover the defect if there was one.   There was nothing to show that the car had ever started before from a state of rest.   There was nothing to show that the car was not in first class condition before the accident, and the undisputed evidence was that it went to the end of the route after the accident "perfectly properly."   The only cause of the accident which the expert who was called by the plaintiff suggested was that there might have been a short circuit somewhere.   But if there was a short circuit neither he nor any one else attempted to show how it occurred or that it could have been discovered by the exercise of proper care on the part of the defendant.   On the contrary, the expert admitted, in effect, that he never knew of a car being started by a short circuit, and that, though he had heard of a car starting of itself, he never could see any evidence of a short circuit in such cases.   The cause of the accident was, therefore, wholly a matter

of conjecture.  Cases where negligence has been inferred from the happening of the accident do not apply.  In those cases the circumstances were such that the jury were justified in inferring in the absence of any explanation, that according to common experience the accident would not have happened except for the defendant's fault.  But where, as here, even if the accident may be evidence of a defect somewhere, the cause of the accident remains wholly a matter of conjecture and no one can say in the absence of explanation either from common experience or otherwise that it happened through the fault of the defendant the doctrine of *res ipsa loquitur* does not apply.  The mere happening of an accident under such circumstances never has been held to be enough of itself to render the defendant liable.  *Kenneson* v. *West End Street Railway*, 168 Mass. 1.  *Hofnauer* v. *R. H. White Co.* 186 Mass. 47.  *Faulkner* v. *Boston & Maine Railroad*, 187 Mass. 254.  In *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40, one of the latest of the cases relied on by the plaintiff, there was testimony tending to show that the machine had been broken and repaired, and that it was impossible for it to start from a full stop unless there was some defect in the belt or the machine itself, and manifestly, if there was, failure to discover it could properly be imputed to the defendant's negligence.  In *Hebblethwaite* v. *Old Colony Street Railway*, 192 Mass. 295, the latest case relied on, the circumstances were clearly such as to warrant a finding that there was a lack of proper care on the part of the defendant.

*Exceptions overruled.*