JOHN MULVANEY *vs.* J. ARTHUR PECK.

Suffolk.   March 25, 1907. — June 19, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

At the trial of an action by a press feeder in a printing establishment against his employer to recover for personal injuries alleged to have been due to a defect in the machine he was feeding, it appeared that the machine, after being stopped by the plaintiff, started of itself and caught his hand, that it was intended to be started by a shipper which shifted a belt from a loose to a fixed pulley, that it had been used continuously by the defendant for ten years and that it was second hand when the defendant got it. There was evidence that a belt and pulley on such a machine might become so worn by use that the belt would be shifted automatically. There was also evidence that the machine was oiled daily but had never been inspected, that never before had a machine in the defendant's establishment started of itself, and there was testimony by the defendant and his son that they had used the machine for printing immediately before and after the accident and had observed no defect in it. *Held*, that there was evidence for the jury that the machine started of itself because of a defect in the belt and pulleys due to negligence of the defendant.

TORT. Writ in the Municipal Court of the City of Boston dated March 23, 1904.

On appeal to the Superior Court, the case was tried before *Hardy*, J., who refused a request of the defendant to instruct the jury to return a verdict for him. There was a verdict for the plaintiff and the defendant excepted.

The material facts are stated in the opinion.

*J. A. Lowell*, for the defendant.

*F. J. Carney*, (*F. R. Mullin* with him,) for the plaintiff.

LORING, J. This was an action for injuries caused by the automatic starting of a printing machine on which the plaintiff was at work.

The plaintiff, who had had experience in such work before he was employed by the defendant, was at the time of the accident feeding a Golding press. A Golding press is a printing machine where the type is set in a bed on the face of an upright standard. The sheet to be printed is placed in a platen which, when at rest, is at an angle with the standard. The press is set in

motion by an ordinary shipper which transfers the belt from the loose to the tight pulley, and thereupon the platen, with the matter to be printed upon it, moves forward against the type upon the bed of the press.

The plaintiff was printing box covers, and his story is that the printing on the covers as they came from the machine was not what it should be. For that reason he stopped the machine, took the covers that had been printed to the light, and then returned and put in his hand between the platen and the type bed to take off the cover then on the platen, when the machine started automatically and caught his hand below the knuckles.

There was no evidence that this or any other machine in the defendant's shop ever had started automatically before, and there was no evidence as to the condition of the machine after the accident except the testimony of the defendant, who was called by the plaintiff, and that of his son who was called as a witness by the defendant. The defendant testified " that before the accident he never knew anything the matter with the press; that he had worked on the machine a day or two before the accident and that it ran all right." His son testified " that he finished up the job that the plaintiff was working on after the accident; that there was nothing the matter with the machine ; . . . that he thought he worked on the press the day before the accident; that there was nothing the matter with it."

The defendant admitted that in giving his deposition he may have said in answer to the question: " If the belts were out of order they might cause the press to start by shifting it to the tight pulley from the loose pulley," " Yes, I wouldn't know till it started. The wearing of the belt and pulley is gradual and might be such as to cause the pulley to slip, but I couldn't tell without taking it apart and inspecting it." The defendant's son testified that the pulley might be worn so that it would have a tendency to cause the belt to shift or to slide from one pulley to the other.

No inspection had been made beyond oiling the machine every morning. In that connection the defendant testified : " We don't look at every belt every morning. We don't look at every pulley on every press any more than a woman would on a sewing machine when she is running it from day to day. Every

morning she doesn't lift the body of the machine up and try every wheel everywhere. We look at the press, we oil it and it runs right from day in and day out, and of course we don't pull it apart unless we found something, oiled it and saw that it did. The press is oiled and seen to the first thing in the morning, that it is all right and that is as far as the inspection they ever got, unless there is something seems to be wrong with them."

The defendant further testified that the machine had been in his shop probably ten years, and that it was a second hand machine when he bought it.

The defendant asked for a verdict as matter of law, which was denied, and the case is here on an exception to that ruling.

The contention of the defendant is that although the automatic starting of the machine is evidence of a defect, it is not evidence that the defendant was negligent in not foreseeing the likelihood of its happening and in not doing what was necessary to prevent it; and he relies on *Ross* v. *Pearson Cordage Co.* 164 Mass. 257; *Kenneson* v. *West End Street Railway*, 168 Mass. 1; *Curtin* v. *Boston Elevated Railway*, 194 Mass. 260, and cases like these; and he also relies on *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 338; *Hill* v. *Iver Johnson Sporting Goods Co.* 188 Mass. 75.

The plaintiff relies on *Donahue* v. *Drown*, 154 Mass. 21; *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407; *Connors* v. *Durite Manuf. Co.* 156 Mass. 163; *Packer* v. *Thomson-Houston Co.* 175 Mass. 496; *Gregory* v. *American Thread Co.* 187 Mass. 239; and *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40.

The defendant is right in his contention that the cases cited by the plaintiff do not reach the case at bar. In *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, *Packer* v. *Thomson-Houston Co.* 175 Mass. 496, and *Gregory* v. *American Thread Co.* 187 Mass. 239, there was evidence that the machine had started automatically before the accident in question and that the defendant knew it. In *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40, there was evidence that the press in question had been broken two or three weeks before the accident and had been repaired. In *Donahue* v. *Drown*, 154 Mass. 21,

and *Connors* v. *Durite Manuf. Co.* 156 Mass. 163, the machine had started automatically from a full stop before the accident. But in *Donahue* v. *Drown* the court seems to have proceeded on the assumption that the jury were not warranted in finding that this was known to the defendant, and held that the case was properly left to the jury because of the evidence. In that case there was evidence that " the belt shifted from the loose pulley to the fixed pulley," and there was also evidence that this "machine was defective in that it was not put up properly; that the driving pulley upon the main shaft had a convex surface, instead of a flat surface such as it should have had, and was so situated with reference to the fixed pulley that the tendency was to draw the belt from the loose pulley when the machine was not in motion on to the fixed pulley, and thus to start the machine; and that this tendency was increased by the looseness of the shipper." In *Connors* v. *Durite Manuf. Co.* 156 Mass. 163, there was evidence that the machine was an old one when bought, and a few weeks after it was set up it was repaired by the seller at the request of the defendant; and that at that time a defect was discovered which would cause the machine to start automatically if the throttle valve was leaking, and that the wear and tear which caused the defendant to send for the seller to repair the machine would cause the throttle valve to become leaky. Yet no examination was made to see if the throttle valve was leaky.

On the other hand *Curtin* v. *Boston Elevated Railway*, 194 Mass. 260, and *Kenneson* v. *West End Street Railway*, 168 Mass. 1, relied on by the defendant, do not reach this case. In both these cases it was a matter of conjecture what caused the injury, and, under those circumstances, although the happening of the accident was evidence of a defect, it is not evidence that the defendant was negligent in not foreseeing and taking the necessary steps to prevent it. In other words, these cases come within *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 388, and *Hill* v. *Iver Johnson Sporting Goods Co.* 188 Mass. 75.

The case at bar is a case midway between cases where the machine in question or other similar machines of the defendant had started automatically before the accident and the jury were warranted in finding that the defendant knew of it, and the other

cases relied on by the plaintiff where there was evidence of defects not properly repaired on the one hand, and on the other hand cases relied on by the defendant where the cause of the accident was on the plaintiff's evidence a matter of conjecture.

*Ross* v. *Pearson Cordage Co.* 164 Mass. 257, is more like the case at bar than any of the others, in that (1) there was no evidence that the machines in question in the two cases or any similar machines of the defendant ever had started automatically before the date of the accident and (2) because the machines in question in the two cases were the same in respect to the matter under discussion, that is to say, both were stopped and set in motion by a shipper in connection with a loose and a tight pulley. But in *Ross* v. *Pearson Cordage Co.* there was no evidence that the pulley might have been worn so that it would have a tendency to cause the belt to shift from one pulley to the other. In addition to that (and this is a more satisfactory distinction between the two cases) there was no suggestion in *Ross* v. *Pearson Cordage Co.* that the machine there in question was a second hand machine which had been in use for a long time, while in the case now before us it is admitted that the machine was bought by the defendant some ten years before the accident, and when bought was a second hand machine.

In the case at bar the fact that this machine, a second hand machine when bought by the defendant, had been in use for ten years without its ever having been inspected, taken in connection with the evidence that the loose pulley might be worn by use in such a way that the belt would have a tendency to shift from the loose to the tight pulley, warranted a finding that the defendant had been negligent.

*Exceptions overruled.*