ANNIE RYAN *vs.* FALL RIVER IRON WORKS COMPANY.

Bristol.    October 26, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability. *Evidence*, Presumptions and burden of proof, *Res ipsa loquitur*.

At the trial of an action against a corporation operating a cotton mill by a woman who, while employed in the weaving room, received injuries alleged to have been caused by the sudden and automatic starting of a loom due to its defective condition, it appeared that the loom, which was constructed so as to be started and stopped by the use of a shipper which shifted a belt from a loose to a tight pulley, and was intended to be started in that way only, never before had started automatically, but there was evidence tending to show that it had been in use many years, that its shaft had become so worn that, some time before the accident, a new one had been substituted, and that the adjustment of the new shaft to the old loom was made in a manner which might have been foreseen by one familiar with the mechanism to make it likely that the belt would work from the loose to the tight pulley automatically and start the loom. *Held*, that there was evidence from which the jury would be warranted in finding that the cause of the automatic starting of the loom was a defect therein such as, under R. L. c. 106, § 71, cl. 1, rendered the defendant liable for the consequences of the plaintiff's injury.

A request of the defendant at the trial of an action of tort by an employee against his employer under R. L. c. 106, § 71, for a ruling that, since there was uncon-

tradicted evidence introduced by the defendant that the injury to the plaintiff resulted from the act of a fellow servant, he could not recover, should not be given since the jury might disbelieve such testimony.

At the trial of an action against a corporation operating a cotton mill by a woman, who, while employed in the weaving room, received injuries alleged to have been caused by the sudden and automatic starting of a loom due to its defective condition, it appeared that the loom, which was constructed to be started only by means of a shipper and should have remained at rest unless so started, never before had started automatically, but there was evidence tending to show that the loom was an old one and that some repairs had been made upon it within three months before the accident, and that the repairs were made in an improper way, so as to render automatic starting likely. The presiding judge in his charge to the jury stated: "If you are not satisfied as to what was the specific cause of the starting of the loom, but do find as a fact that it did start suddenly from a position of rest when it had been properly stopped, you may consider that fact as evidence to show that there was some defective condition in the loom and some negligence in connection with that defective condition, even though you cannot state specifically what the defective condition was." *Held,* following *Byrne* v. *Boston Woven Hose Co.* 191 Mass. 40, that the instruction was proper.

TORT under R. L. c. 106, § 71, cl. 1, for personal injuries alleged to have been received by the plaintiff while in the defendant's employ. Writ in the Superior Court for the county of Bristol dated November 13, 1906.

There was a trial before *Schofield,* J., and a verdict for the plaintiff. The defendant alleged exceptions. The facts are stated in the opinion.

*R. P. Borden,* for the defendant.

*J. W. Cummings,* (*C. R. Cummings* with him,) for the plaintiff.

RUGG, J. This is an action of tort brought under the employers' liability act, for injuries occasioned to the plaintiff while an operator in the weave room of the defendant's cotton mill, and alleged to have been caused by a defect in its ways, works and machinery. The plaintiff had been at work for the defendant for about thirteen years previous to the accident. One of the machines upon which she worked was a Mason loom, which had been in use a good many years. It was started and stopped by a shipper, which moved the belt on to and from a tight and a loose pulley. The plaintiff testified, in substance, that about three months before the accident she had a lot of trouble with this loom; it required oiling more frequently than any other loom, and the pulleys were "going up and down;" it not being her duty to care for the machinery, she reported, and a loom

fixer did something to it; the following week he took both pulleys off, and did some filing, and then replaced the pulleys, and put some pieces of tin or hoop iron in the side of the loom where the shaft runs above the box, " between the box and the side of the loom holding the box into the side of the loom "; some of these pieces came out twice and dropped on the floor, and she again called the fixer's attention to it; after these pieces fell out both the tight and loose " pulleys would keep jumping up and down " at the same time, both when the belt was on the loose pulley and when it was on the tight pulley; the pieces seemed to her to be put in to prevent the shaking of the pulleys; after the loom had been fixed, it did not run right, and the shafting used to get hot, and the fixer came to it; it had been running all right for a week before the accident. There was also evidence tending to show that the use of hoop iron for holding the box of the shaft, on which were tight and loose pulleys, into the side of the loom was not a proper appliance, and that its use for packing, although common, was not right, and the tendency of such appliances, the purpose of which was to hold the shaft true, would be to let the shaft get out of true, and that this would permit the belt to creep from the loose to the tight pulley. According to the plaintiff, the accident happened in this way: She stopped the loom for the purpose of repairing a bad place in the weaving ; while doing this, with no one else near, the loom started without any apparent cause, and caught and injured her arm. The force of all this testimony was broken somewhat by the cross-examination, but the jury might still have given it full credence. There was also testimony from the loom fixer of the defendant that the repairs made consisted of replacing an old and worn out shaft with a new one. This evidence, if believed, was sufficient to bring the case within the rule established in a considerable number of decisions.

In most cases of the automatic starting of machines from a state of rest, there has been some evidence of a previous similar starting, with notice of which the defendant might have been charged. *Donahue* v. *Drown*, 154 Mass. 21. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. *Martineau* v. *National Blank Book Co.* 166 Mass. 4. *Packer* v. *Thomson-Houston Electric Co.* 175 Mass. 496. *O'Neil* v. *Ginn*, 188 Mass. 346.

*Lynch* v. *Stevens & Sons Co.* 187 Mass. 397. *Fountaine* v. *Wampanoag Mills*, 189 Mass. 498. But it is not necessary, in order to establish negligence of the defendant, that it should have had express notice of the precise irregularity which resulted in the injury. It is enough if such circumstances appear as to render it likely that the harmful event would not have happened except for some act or omission amounting to a want of ordinary precaution. The mere starting of a machine, without the intervention of any human agency and when it should have remained at rest, is of itself evidence of some defective condition. To this extent the doctrine of *res ipsa loquitur* has been established. *Gregory* v. *American Thread Co.* 187 Mass. 239, 242. See *Coleman* v. *Mechanics' Iron Foundry Co.* 168 Mass. 254; *White* v. *Boston & Albany Railroad*, 144 Mass. 404. Here the machine had been in use many years, and the shaft had become so worn that it was necessary to substitute a new one, and there was some slight evidence that the adjustment of the new shaft to the old loom was made in such a manner that it might have been foreseen by one familiar with the mechanism, that the belt was liable to work from the loose to the tight pulley. These circumstances, in connection with the fact of the starting of the machine, constituted not only evidence of a defective condition of the machine, but also that the defendant, in the exercise of due precaution, might have discovered the defect. *Gregory* v. *American Thread Co.* 187 Mass. 239. *Connors* v. *Durite Manuf. Co.* 156 Mass. 163. The defendant's first, fourth, sixth and eighth requests for instructions were therefore properly refused.*

Its ninth request, to the effect that, there being uncontradicted evidence that the loom was started by the act of a fellow servant, the plaintiff could not recover, was rightly refused, for the reason that the jury may have disbelieved this testimony, even though uncontradicted. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314.

The defendant has strongly argued that there was error in that portion of the charge by which the jury were told, " If you are not satisfied as to what was the specific cause of the starting of the loom, but do find as a fact that it did start suddenly from

---

* These were in substance requests that on all the evidence the plaintiff could not recover.

a position of rest when it had been properly stopped, you may consider that fact as evidence to show that there was some defective condition in the loom and some negligence in connection with that defective condition, even though you cannot state specifically what the defective condition was." This statement and various amplifications of it used by the trial judge follow almost exactly the language which was held to be correct as applicable to similar facts in *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40. In that case, as in this, the machine had never before started of its own motion, but there it had broken down two weeks before and had been repaired, while here a part had been worn out and had been replaced by a new one, which had not in all respects worked well. It has been urged that the jury might have found on the evidence that the loom had been put in good condition by the repairs made upon it, and that if this was so, then mere automatic starting is not evidence of negligence. The occurrence of an accident, standing alone, is not always evidence of negligence. It may be as consistent with the innocence as with the fault of the person controlling the agency by which the accident happened. When the precise cause is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then a verdict should be directed against the plaintiff. The law knows no general rule of absolute insurance against injury. *Kenneson* v. *West End Street Railway*, 168 Mass. 1, *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 338, *Hill* v. *Iver Johnson Sporting Goods Co.* 188 Mass. 75, *Flynn* v. *Beebe*, 98 Mass. 575, *Curtin* v. *Boston Elevated Railway*, 194 Mass. 260, *Thompson* v. *National Fireworks Co.* 195 Mass. 327, *Hofnauer* v. *R. H. White Co.* 186 Mass. 47, *Childs* v. *American Express Co.* 197 Mass. 337, are illustrations of this doctrine. But the unexplained automatic starting of a machine, when it ought to remain at rest, stands upon a different basis. It is a personal duty of the employer to furnish and maintain for employees for use in their work reasonably safe and proper machinery and appliances, so far as the exercise of proper care will secure them. This duty arises out of the relation of master and servant and cannot be delegated. It is a continuing obligation and may require frequent and efficient inspection and repair. It involves exclusive control, so far as

necessary for the performance of the duty.   Under these circumstances the court would not be justified in saying that the jury might not find, as men of experience in common affairs of life, that such a machine does not ordinarily start automatically without some negligence of omission or commission on the part of the employer, and that the existence of such negligence is the rational explanation of the starting.   This was the decision in *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40, and is supported by the principle elaborated in other authorities in addition to those heretofore cited.   *Copithorne* v. *Hardy,* 173 Mass. 400.   *Cahill* v. *New England Telephone & Telegraph Co.* 193 Mass. 415. *Moynihan* v. *Hills Co.* 146 Mass. 586, 591.   *Toy* v. *United States Cartridge Co.* 159 Mass. 313.   *Graham* v. *Badger,* 164 Mass. 42. *Minihan* v. *Boston Elevated Railway,* 197 Mass. 367.   *Flaherty* v. *Norwood Engineering Co.* 172 Mass. 134.   *Griffin* v. *Boston & Albany Railroad,* 148 Mass. 143.   *Hebblethwaite* v. *Old Colony Street Railway,* 192 Mass. 295.   *Mulvaney* v. *Peck,* 196 Mass. 95. There is nothing in *Ross* v. *Pearson Cordage Co.* 164 Mass. 257, in conflict with these conclusions.   The plaintiff in that case did not rest upon the liability which might spring *prima facie* from the automatic starting of the drawing frame, but, having shown by her own expert that there was no defect in the machine, sought to fasten responsibility for her injury upon the employer on the ground that the shipper, by which power was communicated to and disconnected from the machine, should have been fitted with some device for securing it in position, although it was in the same condition as at the time the contract for service began, and of a type in common use.   The decision was placed upon the ground that the mere absence of these contrivances under such circumstances was not enough to charge the defendant.   In this as well as in the other respects pointed out in *Mulvaney* v. *Peck,* 196 Mass. 95, *Ross* v. *Pearson Cordage Co.* is distinguishable from the case at bar.

The defendant objected that, in the question to the plaintiff's expert, facts were assumed which were not in evidence, and excepted to the refusal of the presiding judge to exclude the question on this ground.   The judge correctly ruled that the jury must find that there was sufficient evidence to support a finding of the facts assumed in the question before they could give any

weight to the answer. The facts assumed in the question were the holding of the box, through which ran the shaft carrying the fast and loose pulleys, into the side of the loom with pieces of hoop iron. The plaintiff testified that the pieces of hoop iron were holding the box into the side of the loom. Upon this state of evidence the question to the expert could not. have been excluded.

*Exceptions overruled.*