GERTRUDE McAVOY *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Middlesex.    February 3, 1931. — February 26, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Negligence,* Street railway.

Where, at the trial of an action against a street railway company for
personal injuries alleged to have been suffered by one who was thrown
while alighting from a "one man" street car of the defendant, there
was evidence warranting a finding that, as the plaintiff, in the exer-
cise of due care, was on the step of the front platform, the car, which
was on an incline sloping toward the rear, rolled backwards and
caused him to be thrown to the street, it was improper to order a
verdict for the defendant, and a verdict for the plaintiff would have
been warranted.

TORT by a passenger of the defendant for personal in-
juries. Writ dated September 16, 1926.

In the Superior Court, the action was tried before *P. J.
O'Connell,* J. Material evidence is stated in the opinion.
At the close of the evidence, the judge ordered a verdict
for the defendant and reported the action for determina-
tion by this court, it being agreed that, if his ordering
of a verdict was correct, judgment should be entered on
the verdict; otherwise, judgment should be entered for the
plaintiff in the sum of $2,500.

*T. F. Quinn,* for the plaintiff.

*C. S. Walkup, Jr.,* for the defendant.

CROSBY, J. This is an action to recover for personal in-
juries received by the plaintiff, a minor, and is brought by
her father and next friend. The plaintiff testified in part
as follows: On August 21, 1926, she was sixteen years old
and lived at 17 Park Street, Somerville. On that day,
for the purpose of reaching her home, she boarded a Por-
ter Square car of the defendant at Central Square, Cam-
bridge. It was a one-man car, and, after coming to a full
stop at the corner of Beacon and Park streets where there

was a car stop, the doors were opened by the operator. Before that time she had been seated in the middle of the car. When she left her seat she proceeded to the front of the car and dropped her fare in the fare-box, where the operator stood. Two men and a young woman alighted, and then the plaintiff started to leave the car; she put her foot down on the step, and was about to put her other foot down on the street when the car suddenly rolled backwards and she and another passenger, an elderly woman, who was alighting at the same time, were thrown into the street. The plaintiff further testified that she struck on her forehead, hands, left hip and left knee; that from the time the car rolled backwards until she was assisted to her feet she noticed that the doors of the car had been closed and it had started toward Porter Square; that she did not see the motorman get off the car. She testified on cross-examination that as she and the other woman were alighting the car suddenly rolled backwards and threw them both into the street; that she did not know how far back the car moved, but that it was farther back than the place where she was on the street; that from the time she was alighting until the car started to move back she was within view of the motorman all the time.

Another witness, called by the plaintiff, testified that he was present when the car came to a stop; that the front doors were open and people were alighting, and he heard a scream and saw two women lying on the ground; that at that time he noticed that the car moved backwards, he thought about seven feet, and then moved forward with the doors closed and went past the place where he was standing. A brother of the plaintiff who was present when the car came to a stop testified that the doors were opened and passengers were alighting; that he saw five passengers get off, two men, two women and a boy; that, after two men had gotten off, and when his sister and a woman started to get off, the car rolled back suddenly and at that time the woman and his sister were thrown out onto the street; that his sister " came out head first " when she was alighting from the car; that the car rolled

back about seven or eight feet, and then started up again; that the motorman did not get out of the car after the accident; that his sister was lame when he assisted her to her feet. This witness further testified that there is a slight incline of the track at the corner of Park and Beacon streets right by the car stop, and that Beacon Street slopes toward Arnold Court which is in the direction from which the car had come. Another witness, called by the plaintiff, testified that when he saw her and the other woman on the street the car was rolling backwards and that it rolled back probably three feet; that during the time it was rolling backwards the doors of the car were opened. He testified that the motorman did not get out of the car, and that the witness assisted the plaintiff to her feet.

At the close of the evidence offered by the plaintiff the defendant rested and presented a motion for a directed verdict; this was granted by the trial judge and a verdict was returned for the defendant. The plaintiff excepted to this direction and to the entry of the verdict.

We are of opinion that whether the motorman exercised that high degree of care in running and controlling his car which is consistent with the practical performance of his duties and provides for the safety of his passengers was a question of fact for the jury, and that a verdict could not properly have been directed for the defendant. The evidence warranted a finding that the car came to a full stop at the corner of Beacon and Park streets; that as the plaintiff was on the step of the car and was proceeding to alight it suddenly moved backwards and she was thrown to the ground and injured. It could have been further found that the car was on a grade which caused it to move backwards several feet, with the result that she was thrown on the ground. Upon this evidence the jury would have been justified in finding that the operator, in opening the doors for the purpose of allowing passengers to alight before the brakes were properly applied, was lacking in exercising the degree of care due the plaintiff. It also could have been found that if the brakes had been

properly applied by the operator the car would have remained at rest even if on a grade. The plaintiff was entitled to assume that the car would not be started until she had passed out of it and had reasonable opportunity to reach the ground. The jury were warranted in finding that the operator was negligent in not applying the brakes and in thus allowing the car to run backwards while the plaintiff was in the act of alighting. *McDermott v. Boston Elevated Railway,* 208 Mass. 104. *Vine v. Berkshire Street Railway,* 212 Mass. 580. *Whiteacre v. Boston Elevated Railway,* 241 Mass. 163. *Mucci v. Boston Elevated Railway,* 262 Mass. 308.

It is settled that where " the cause of the accident has come from the lawful operation by lawful means of an authorized instrumentality, and where any damage or injury that has resulted may have come without any negligence of the defendant, but may have arisen merely as an unavoidable accident from the careful and skilful exercise of its lawful rights in spite of the observance of all proper precautions, there no liability can arise without some affirmative evidence of negligence. In such a case the happening of the accident with the resulting injury is as likely to have come without the fault of the defendant as to have been due to its negligence, and the presumption of fact upon which the doctrine *res ipsa loquitur* is based does not arise; the inference of negligence cannot be drawn without some evidence to support it." *Carney v. Boston Elevated Railway,* 212 Mass. 179, 180. *Curtin v. Boston Elevated Railway,* 194 Mass. 260. *Sheehan v. Boston Elevated Railway,* 220 Mass. 210. The law as above stated has no application to the case at bar. This is not a case of the unexplained starting of a car. The evidence warranted a finding that it came to a full stop on a grade, and that, after an implied invitation to alight, by opening the doors, had been given to passengers, the car moved backwards and the plaintiff while in the act of alighting was violently thrown upon the street.

The evidence warranted a finding that the plaintiff was in the exercise of due care, and we do not understand

that the defendant contends to the contrary. In accordance with the terms of the report judgment is to be entered for the plaintiff in the sum of $2,500.

*So ordered.*