## Texas & Pacific Railway Company v. G. W. Crow.

### No. 148.

1. **Injury to Employe—Case in Judgment.**—Appellee was the night yardmaster, and was hurt while filling a car with water at night, which was one of his duties. The tank spout fell upon him after he had filled the car and returned the spout in the usual manner. The day yardmaster had been notified that the spout was out of order, but plaintiff had no knowledge of the defect, and it was not a part of his duty to keep the tank fixtures in repair, or to inspect or report them. His injuries were severe. Under these facts a verdict for $6000 was affirmed.

2. **Compromise of Claim.**—Plaintiff signed a paper which released the defendant company from all liability for the injury sustained, in consideration of the sum of $100. Plaintiff testified that he had no recollection of ever signing the paper, or agreeing to any compromise, and pleaded that he was non compos mentis when he signed it. The evidence was conflicting, and from all the testimony the jury might well have concluded that such was the plaintiff's condition when he signed the release, and the verdict will not be disturbed.

3. **Erroneous Charge Asked on Unsafe Appliances.**—The court correctly refused to give a charge, "that if the water spout was caused to fall because the appliance that held it up needed the nuts loosened, that this would not be such a defect as would make the defendant liable." The law imposes upon the master the duty to furnish his servants with reasonably safe implements, and to use reasonable diligence and care for keeping them in repair, and if they were so out of repair as to make their use dangerous, the character of the defect was immaterial.

4. **Knowledge of Defect by Employe.**—Though plaintiff had been at work in the yard for three years, and the spout had been out of repair three months, and other employes knew it, there is no evidence that he had actual notice of the defect. He performed his duties in the nighttime; the defective implement was several feet above the cars, and plaintiff himself testifies that he did

not know it was out of repair; while it is shown that defendant knew that it was. We can not say that under this state of the evidence plaintiff must be charged with notice of the defect in the implement.

APPEAL from Gregg.   Tried below before Hon. FELIX J. McCORD.

*F. H. Prendergast,* for appellant.—The employe can not recover if his means of being informed as to the condition of the appliance is equal to the means of the company.   Railway v. McNamara, 59 Texas, 258; Railway v. Lempe, 59 Texas, 19; Railway v. McCarthy, 64 Texas, 636; Wood's Ry. Law, sec. 386; Railway v. Strand, 31 Am. and Eng. Ry. Cases, 445.

*R. C. De Graffenreid,* for appellee.—It devolves upon the master to furnish the servant with safe machinery, appliance and appendages thereto. The plaintiff being employed in a different department than that of building and repairing of tanks, is not visited with the knowledge of their condition; nor is he charged with the duty of inspecting them, and could safely assume that the master would faithfully discharge his duty, and cause the tank to be inspected and kept in safe repair.   His ignorance of the defect, whether it applied to the construction or the repair of the tank, would not be negligence.   Railway v. Dunham, 49 Texas, 181; Railway v. Oram, 49 Texas, 345; Railway v. Aylward, 79 Texas, 675; Railway v. Herbert, 116 U. S., 652.

PLEASANTS, ASSOCIATE JUSTICE.—The appellee was night yardmaster for appellant at Toyah, Reeves County, Texas, and while engaged in filling a car with water from a tank, was hurt.   He brought suit on the 25th of September, 1890, and recovered a judgment against appellant company on the 6th of December, 1891, for the sum of $6000.   Plaintiff was injured on the 29th of September, 1889; had been working for appellant in its yard at Toyah for two years.

The tank at which he was hurt was in that yard, and he was injured by the spout of the tank falling on him; was knocked from the car on which he was standing to the ground, and was by the blow rendered senseless for some hours.   His injuries were severe, and his sufferings, physical and mental, were great; and he was still suffering at the time of the trial from partial paralysis of one side and from loss of hearing, both of which afflictions resulted from the blow received in September, 1889, from the spout of the water tank.

The water tank had been out of fix for about three months.   The evidence as to the particular defect in the apparatus for using the spout was conflicting.   The witness Leonard, who testified for plaintiff, and who was plaintiff's assistant in the yard, testified that the spout was operated by ropes and fixtures, as used on all tanks on the appellant's railway, and

that the same was out of repair—that the nuts needed to be loosened and oiled; and another witness for plaintiff (Whitney), and who, at the time of the plaintiff's injury, was yardmaster in the daytime at Toyah, testified that the spout was out of repair; that the pulley through which passed the chain used in raising and lowering the spout was broken. He did not know how long the pulley had been out of repair; discovered it was defective by using it.

The witness Leonard further testified, that he knew that the fixture for working the spout was defective, because he had worked the spout, and because he was told so in July, 1889, by Whitney, the day yardmaster. He testified also, that he gave notice of the defect to the foreman of the round house and to the pumper.

There were two tanks in the yard, which are designated by the plaintiff as the eastern and western tanks. The eastern tank the plaintiff knew was out of order, and for that reason went to the western tank to fill the water car. It was in the line of plaintiff's duties to fill water cars and engines. The water cars are used for distributing water at different points along the line of the appellant's railway. The duties of plaintiff, in addition to filling the engines and water cars, were to make up trains under orders from the station agent, and to place the cars in their proper positions for being loaded and unloaded, and to place them on the proper tracks when they were to be taken from the yard. These duties were performed in the nighttime, and plaintiff was struck by the spout in the night. He had finished filling the water car, and gave the spout a start upward in the usual manner, and was turning round and reaching for his lantern, when he was struck upon the head by something which he supposed was the spout, and was knocked from the car to the ground.

Plaintiff had no actual knowledge of the defect in the fixture for operating the spout on the western tank. There is no evidence tending to show that it was any part of plaintiff's duty to keep the tanks or the fixtures in repair, or that it was his duty to inspect them and to report to the proper officer or servant of the defendant company any defect which might be discovered.

The defense was, that the plaintiff knew of the condition of the tank and its fixtures and took the risk, and that defendant did not know of their condition; and that plaintiff compromised and settled his claim on the 26th of November, 1889; and the plaintiff replied, that he was not capable of contracting on the day the alleged compromise and settlement was made by him with defendant. That plaintiff did sign a paper which released the defendant from all liability for the injury sustained by him, in consideration of the payment of $100, and that the money was paid him and used by the plaintiff, are facts established beyond controversy; but while there is no direct testimony that plaintiff was non compos mentis on the very day on which the release was signed, there is ample evidence to

sustain the finding of the jury that such was his condition when the release was signed. The testimony of the two men who witnessed the execution of the release is, that plaintiff carefully read over the paper and then signed it, and that he acted as any other sane man. The plaintiff testified, that he had no recollection of ever signing the paper or agreeing to any compromise, nor had he any recollection of receiving the money from the defendant; and that when he was shown the paper several months after its execution, he had no knowledge of ever having executed it, and that he immediately afterwards instituted this suit. Plaintiff did not deny his signature to the paper purporting to be his release to the defendant; he thought it resembled his signature, and might be it, but he had no knowledge of having executed the paper.

Mrs. Crow, the wife of plaintiff, testified, that when plaintiff left home, just before the time when he signed the release at Dallas, his mind was so affected that he was unable to take care of himself; that her husband left home for the hospital, and that she requested the officials of defendant at Toyah to send some one with him, and they promised to do so. This was in March, 1889. Crow went to Dallas instead of going to the hospital, and returned home in a few days, but said nothing to his wife about having made a compromise with the company. She knew nothing of any settlement with defendant or any release from her husband to defendant.

Other witnesses testified as to the mental condition of plaintiff just before he was injured and just after, and for many months after the date of the release; and among these, witnesses who treated plaintiff for his injuries; and from the testimony of these several witnesses the jury might well have concluded that plaintiff when he signed the release was non compos mentis.

Having in the foregoing statement of the case given our conclusions upon the facts, we will now consider and give our conclusions upon the propositions of law presented under the appellant's five assignments of error. We will not consider these assignments in the order of their presentation. The fifth assignment complains, that the court did not grant a new trial because the plaintiff compromised and settled his claim, and received and used the money paid him by defendant in consideration of the settlement and release, and that the evidence is not sufficient to show the insanity of the plaintiff at the time of the settlement.

In disposing of this assignment of error, it is sufficient to say, that there is no complaint by the appellant that the jury were not properly instructed as to the law which should govern them in determining whether or not the release signed by plaintiff was a bar to his suit; and the evidence, as we have before stated, was ample to warrant the jury in concluding that the plaintiff was non compos mentis when he signed the paper; and if such was the plaintiff's condition, his right to recover in this suit was not lost by signing the release.

The first assignment of error is, "The court erred in refusing to charge the jury as requested by the defendant, that if the water spout was caused to fall because the appliance that held it up needed the nuts loosened, then this would not be such a defect as would make defendant liable." The law imposes upon the master the duty to furnish his servants with reasonably safe implements, and the further duty of exercising reasonable diligence and care for keeping the same in repair; and if the implement in question was so out of repair as to make its use dangerous, the character of the defect would be immaterial, and could not affect the question of plaintiff's right to recover. We do not, therefore, think the court erred in refusing this charge.

What we have said in disposing of the first assignment of error applies equally to the second assignment of error, which assignment is as follows: " The court erred in refusing a new trial, because the evidence did not show any such defect in the water spout as would made the defendant liable." The evidence was conflicting as to what was the defect in the water spout.. One witness testified that the nuts in the apparatus for lowering and raising the spout needed loosening and oiling, and another testified that the iron pulley over which the chain passed was broken. If either of such defects was sufficient to cause the spout to fall suddenly, after it had been raised to its position when not being used for pouring water from the tank into an engine or water car, it would make the use of the implement unsafe and dangerous; and if so, defendant, if guilty of negligence in not keeping the implement in repair, would be liable for any injury resulting therefrom, if the servant using it was not guilty of contributory negligence.

The third assignment of error is, that the court should have granted a new trial, because the plaintiff had used the water spout for about three years, and could have known of the defect by ordinary care.

The evidence shows that the plaintiff had been at work in the yard of defendant for three years, and that he was night yardmaster at the time of his injury, but it does not show how long he had been using or how often he had used this implement. Plaintiff had an assistant in the yard, and that assistant tells us that the spout, or rather the fixture, had been out of repair for three months previous to the plaintiff's injury; that he discovered the defect by using the implement; but he does not tell us that he communicated the discovery to the plaintiff, or that the plaintiff knew of the defect from any other source. The plaintiff swears that he had no knowledge of the defect; he says that he knew that the fixture to the eastern tank was defective, and for that reason passed it and went to the western tank. There is no evidence whatever that plaintiff had actual notice of the defect. There is no evidence that he ever before the time. of the injury had occasion to use this tank. He declares that he knew nothing of this tank or its defects. The plaintiff performed his duties in

the nighttime. The defective instrument was several feet above the cars brought to the tank to be filled with water. The witness who says that the fixture had been out of repair for three months says further, that the fact was known to the defendant; that he had notified the foreman of the round house and one other servant of the defendant of the defect. Upon this evidence it is assumed by appellant in this assignment that the plaintiff must be charged with notice of the defect in the implement. To this proposition we can not assent. The defective implement in this case is not one which when used is handled, and any defect must almost of necessity be discovered by the person using it. The defective implement was placed and kept some feet above the cars and engines brought to the tank to be filled, and the implement was worked by means of a rope or chain, and the duties of the plaintiff were performed in the night. Our opinion is that the court did not err in refusing a new trial on the ground stated in this assignment.

The appellant complains in his fifth assignment of error, that the court erred in refusing a new trial, because the evidence showed that plaintiff's own act, in raising the spout, was negligent and caused the injury to plaintiff. The only evidence as to how the spout was raised is the testimony of plaintiff himself. The plaintiff testified, that after he had filled the water car he gave the spout a start upward in the usual manner. This evidence certainly does not show negligence on the part of plaintiff in using the defective implement, and we can not infer negligence in the use of the implement from any fact or from all the facts in the record. To authorize a recovery in a case like this, it is incumbent on the plaintiff to place before the court and jury all the facts surrounding and leading to the accident, and these facts must be such, under appropriate instructions from the court, as will authorize the jury to conclude that the defendant was guilty of negligence, and that the plaintiff exercised due care and prudence on his part, and that the negligence of defendant was the proximate cause of plaintiff's injury.

From a careful inspection of the record, and upon due consideration of the argument presented by counsel for appellant, we do not discover that these requirements of the law have not been observed, or that any of them have been disregarded, by the court or the jury, and we must therefore affirm the judgment of the court below.

*Affirmed.*

Delivered May 11, 1893.