PATRICK COLEMAN *vs.* MECHANICS' IRON FOUNDRY COMPANY.

Suffolk.    January 12, 1897. — May 18, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Defective Implement — Evidence.*

If an implement, the breaking of which is attended with danger, breaks in the proper use of it for the purpose for which it was designed, this is some evidence, in an action for personal injuries occasioned to an employee by the breaking, that the implement was defective in the sense that at the time it was not safe or suitable for the use to which it was put.

If, in an action for personal injuries occasioned to the plaintiff by the spilling upon him of molten iron from a ladle in consequence of the breaking of a shank in which the ladle was placed, the plaintiff testifies that at the time of the accident he and a fellow servant who was assisting him in carrying the implement were walking along at a pretty rapid rate, and another witness says that they were

going between a quick walk and a dog trot, and there is evidence tending to show that running with a ladle upon the shank had been forbidden on account of the strain it put upon the shank, evidence that the plaintiff and his fellow servant were running with the ladle on the two trips immediately before the accident is admissible on the question whether the shank had been put to any improper strain by the plaintiff and his companion.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, the nature of which appears in the opinion.

*T. W. Proctor*, for the defendant.

*D. B. Ruggles*, for the plaintiff.

KNOWLTON, J.   The plaintiff and one Keegan, in the foundry of the defendant, were carrying an iron ladle thirteen inches deep and holding one hundred and sixty pounds of melted iron, by means of a shank which consisted of a wrought iron hoop large enough to receive and hold the ladle, to which hoop, on two opposite sides, was attached a wrought iron bar two and a half feet long, with handles, making the whole thing about five feet long.   The ladle had a rim at the top which rested on the hoop, and in carrying it one of the men walked in front and the other behind, both facing in the same direction.   They had carried two ladlefuls from the furnace and poured them into the moulds when, as they were carrying the third, the shank broke at a point about two or three inches from the hoop on the side nearest to the plaintiff, and the molten iron was spilled and he was burned.   The shank was an inch and a half thick at the place of fracture.   There were fifteen shanks similar to this for use in carrying ladles, and several of the plaintiff's witnesses testified that this was the one which was generally preferred. The evidence tended to show that these shanks were inspected regularly every day to see that they were in good condition. Some of the plaintiff's witnesses testified that after the accident the iron at the point of fracture showed that there was an old crack extending through the greater part of the diameter.   Several witnesses for the defendant testified that they examined it and found that there was a new fresh fracture all the way through the iron, and that there were no signs of a previous crack.

The instruction of the court as applied to the evidence was correct. If an implement like this, the breaking of which is attended with danger, breaks in the proper use of it for the purpose for which it was designed, it is some evidence that it is defective in the sense that at the time it is not safe or suitable for the use to which it is put. *White* v. *Boston & Albany Railroad,* 144 Mass. 404. *Moynihan* v. *Hills Co.* 146 Mass. 586. Its use in its unsafe condition may or may not be due to the negligence of its owner.

The plaintiff testified that at the time of the accident he and Keegan were walking along at a pretty rapid rate, and another witness said they were going between a quick walk and a dog trot. There was evidence tending to show that running with a ladle upon the shank had been forbidden on account of the strain it put upon the shank, because at each step the weight of the ladle would come down like a blow.

Proper instructions were given upon the question whether the plaintiff was in the exercise of due care.

The defendant offered to show that the plaintiff and Keegan were running with the ladle on the two trips immediately before the accident, and to the exclusion of testimony to this effect an exception was taken. It is true that the evidence was not competent as tending to show that they were running at the time of the accident, but for another purpose we are of opinion that it should have been received. In view of the testimony of many witnesses that the iron showed a clean fresh break through the whole diameter of the shank, and of the inspector's statement that the shank was in perfect condition on the morning of that day, it was important for the jury to ascertain, if they could, whether the shank had been put to any improper strain by the plaintiff and his companion immediately before the accident. The three trips together occupied only a very short time. The judge permitted the jury to hear and consider the account of the use that was being made of the implement when it broke; but if they had heard the excluded testimony they well might have believed that it got a severe strain on one of the two trips immediately before the accident, which greatly weakened it, although it did not then give way, and that by reason of a defect so caused it broke a few minutes afterwards.

For such a condition, caused by the plaintiff's disobedience of orders, the defendant would not be liable. It was not obliged to provide an implement for an improper or unreasonable use, and it could not be expected to have the shank inspected after every trip that was made with it. We are of opinion that this evidence should have been received.     *Exceptions sustained.*