CHARLES HAINES v. ATLANTIC CITY RAILROAD
COMPANY.

Submitted March 26, 1900—Decided June 11, 1900.

The railroad company had a gateman employed at its crossing over a
public street in Camden. He had turned down the gates for an
approaching train, and when his back was turned, B, a volunteer,
without his knowledge or consent, raised the gates to let the
plaintiff through. While the plaintiff was passing, B turned the
gates down and injured the plaintiff. *Held*, that the company
was not liable for the act of B.

On rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices VAN SYCKEL
and GUMMERE.

For the rule, *J. Willard Morgan* and *Charles V. D. Joline.*

*Contra, Howard Carrow.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This was an action to recover
damages for injuries sustained by the plaintiff at the crossing
of Mechanic street over the defendant's railroad. In July,
1898, the plaintiff, driving a team, was making a delivery of
feed for his employer. In doing this, he had occasion to cross
the tracks of the company at the intersection of Locust and
Mechanic streets. The company had erected gates for the
safety of persons having occasion to use the highway in cross-
ing the tracks of its railroad. When the plaintiff approached
the crossing the gates were down, and when he drove up the
gates were hoisted by a man whom the plaintiff supposed had
charge of the gates. The plaintiff then drove on, and before
he got across the tracks the man who was working the gates
lowered them and struck him and injured him. The plaintiff
had a verdict on which this rule to show cause was granted.

The evidence shows that the person who let down the gates

on this occasion was one Isaac E. Boggs. Boggs was not an employe of the company and never had been in their employ. The gates were in charge of one Joel Perrine. He testified that he had lowered the gates for the train to go by which was due about half-past five o'clock; that after he lowered the gates he turned aside, at the call of one of the carpenters, to unlock the coal-box to allow the carpenters to put their tools in it. There is a conflict of the evidence with respect to what occurred between Boggs and the plaintiff in connection with the raising of the gates. Boggs testified that he was not in the employ of the company; that he was sitting near the gates on a stool; that he knew the plaintiff; that when the plaintiff drove up with his team, he said, "Boggs, raise those gates and let me over; I am in a hurry." The plaintiff testifies that he knew Boggs, but that he made no request to have the gates raised; that nothing was said by him, only the gates were raised, and that he did not notice that the man who was raising the gates was Boggs.

Perrine testifies that he neither authorized nor requested Boggs to raise the gates, and the first knowledge he had of the gates being raised was when he heard the crack of the gates breaking. Boggs says he was not requested by Perrine to raise the gates; he says, "Perrine, the gate tender, was behind the tool-house, and I thought, to accommodate him and not to call him, I would raise the gates." Boggs, in raising the gates, was either a trespasser or an interloper. Can the railroad company be held liable for his unauthorized act?

In refusing a motion to nonsuit the learned judge said: "Where it is in proof that the appliance of the railroad company guarding a public highway was lowered, that, standing alone, raises an inference that it was lowered by the servant of the railroad company. Of course, that is a rebuttable inference." In his instructions to the jury the learned judge said: "The points upon which the plaintiff must satisfy you, in order to recover, are these: That these gates were raised without any invitation by the plaintiff; that he did not ask for them to be raised, and that they were raised by some person who was there operating the gates for the company, not

necessarily under a salary, not necessarily under wages, but who was doing it as for the company. Whether he was doing it to help a friend, or whether he was doing it under a regular salary, or what not, it must be some person who was doing it in behalf of the company. And, furthermore, the plaintiff must have known that it was being done not by a person who was a trespasser or a stranger." The substance of this instruction is that the company is liable if the gates were raised by a person who was there operating the gates, doing it on behalf of the company, whether he was the servant of the company or not, or a trespasser or stranger, provided the plaintiff did not know that such person was a trespasser or a stranger. Whether the gate tender regularly employed by the company was negligent in leaving the gates without some one to look after them was not made an issue in the case.

The gravamen of this suit is negligence on the part of the defendant from which damages resulted, and the burden of proof was on the plaintiff to show negligence on the part of the defendant or of its servants. There is no question but what the company would be responsible for the mode in which the gates were operated by the gateman or its servants. Boggs was not in the employ of the company; it had neither given him authority to do this act, nor had the company done anything to give him the appearance of authority to work the gates. He was, so far as the company was concerned, either a stranger or a trespasser.

Cases which decide that a principal is responsible for the act of a stranger, where his servant employs some third person to perform an act within the scope of a servant's employment and injury results to another, are inapplicable to this case. *Simons* v. *Monier*, 29 *Barb.* 419; *Althorf* v. *Wolfe*, 22 *N. Y.* 355; *Wood Mast. & S., p.* 588. Perrine, the company's gateman, neither employed Boggs nor knew that he was about to meddle with the gates. In *Smith* v. *N. Y., S. & W. R. R. Co.*, 17 *Vroom* 7, 12, the company left a loaded car coupled with two empty cars standing on a switch which inclined towards their main track, the same being secured by their brakes and a railroad tie placed under

the wheels of the loaded car. The car got on the main track and thereby an accident occurred, the plaintiff being injured. It was held that the company was not irresponsible, as a matter of law, even though the cars could not have gotten on the main track but for the wrongful act of a stranger. Chief Justice Beasley, in delivering the opinion of the court, used this language: "Nor would it have been proper to have yielded to the request to tell the jury that the company was not answerable if the collision was produced by the loosening of the car by the unlawful act of a stranger; for this would have been tantamount to saying that a railroad company has the legal right to have a loaded car on a plane inclining towards their track in such a condition that it is subject to become freed from its restraints by any unlawful intervention of human agency, though such intervention should be the mere result of accident. * * * I am not aware of any legal principle that would justify a railroad company in leaving loaded cars in such a situation that they could be caused to run on its main track in the way of its passing trains, by the carelessness of persons passing by or by the act of children playing near their switches." It will be observed that in that case there was fault on the part of the company in leaving its loaded car on a switch inclining towards its main track and liable to be sent down on the latter track. In the present case, so far as the act of the company and of its servants are concerned, there was no fault in the raising or turning down of these gates. Nor are cases such as *Exton v. Central Railroad Co.,* 33 *Id.* 7, where a railroad company was held liable for injuries from the acts and conduct of intruders or strangers, applicable in this litigation. Cases of this class rest upon the duty of the carrier to its passengers, and liability springs from the want of care to protect passengers from injury.

A duty rested on the railroad company in this instance to protect persons using the highway from injury from passing trains. That duty had been performed by the gateman in turning down the gates. It is also conceded that, when danger from an approaching train had passed, it was

the duty of the company to have the gates raised to permit travel over the public highway. The company had provided for the performance of that duty by employing a person as gate keeper. There is no evidence from which it could be inferred that the gates were kept down for an unreasonable length of time. The suit is not brought for damages arising from the unreasonable obstruction of the crossing. The injury which is the subject-matter of this suit was due to the unauthorized act of Boggs, who was, as against the company, both a stranger and a trespasser, assuming to act for the company. The master is liable for the acts of his servants within the scope of the latter's employment. The relation of master and servant which creates the liability of the former for the acts of the latter arises from contract. The consent of the master, express or implied, is essential to such a relation. Here Boggs was not the servant of the railroad company; he did the act complained of without the consent or knowledge of the company or its servants. He could not fix the responsibility for his acts upon the company by volunteering to do this act in behalf of the company, or to accommodate Perrine, the gate tender, and not call him to raise the gates.

The rule to show cause should be made absolute.