## GAMER CO. v. GAMMAGE.

(Court of Civil Appeals of Texas. Amarillo. Nov. 1, 1913. On Motion for Rehearing, Jan. 3, 1914.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—STARTING OF MACHINE—NEGLIGENCE—INSPECTION—EVIDENCE.

Evidence that a machine, by the sudden starting of which its operator was injured, could, except through a defect, be put in motion only by a shifter, throwing the belt from a loose pulley to a tight pulley, or by turning a balance wheel by hand; testimony of the operator that he did not touch either, and testimony of an expert as to three defects which could exist that could start the machine, and that by the exercise of reasonable diligence a master could discover either of such defects, none of them being shown to have existed, and it being shown the machine never acted that way before or afterwards, is insufficient to show negligence of the master in failing to inspect, which was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

On Motion for Rehearing.

2. MASTER AND SERVANT (§ 264*) — NEGLIGENCE—PLEADING AND PROOF.

Plaintiff, in a servant's action for injury, having alleged three defects in a machine, with a general allegation of other defects, is confined to proof of the three specific defects, and defendant is required to meet them only as regards defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Henry C. Gammage against the Gamer Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

See, also, 147 S. W. 721.

Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. Hunter & Hunter and A. J. Clendenen, all of Ft. Worth, for appellee.

HENDRICKS, J. This is an appeal from the district court of Tarrant county, from a verdict and judgment in appellee's favor for $4,000. At the time of appellee's injuries, he was the operator of a machine in appellant's plant, used for the purpose of cutting leather washers, the leather being placed by hand under the cutter fixed in the end of a perpendicular shaft, and the machine set in motion for the purpose of the work by a lever shifting a belt from a loose pulley to a tight pulley on the same shaft, which, with the action of the belt upon the tight pulley, started the machine in operation. The loose pulley turned upon a shaft, without operating the cutter; the tight pulley, with the belt thereon, only transmitting the power to the perpendicular rod operating the cutter. To stop the machine by means of a shifter, the operator would shift the belt back to the "idler" or loose pulley. There was a balance wheel, or a "flywheel" as termed by some of the witnesses, attached to the machine, which could be operated by the employé by hand, and when turned and in motion also moved the perpendicular rod and cutter; and the operation of the flywheel and the movement of the belt upon the tight pulley were the only means by which the machine and cutter could be put in motion, unless started on account of some defect which appellee alleges existed on this occasion, as follows: "That said machinery by reason of the negligence of the defendant, its managers, superintendents, and servants, was out of repair and defective, and was dangerous to work with, the lever being out of repair and not properly secured and fastened so as to hold the belt on the idler, and the belt, being worn and crooked and not true, would not stay on the idler, but by wobbling moved the lever and got onto the fixed pulley and started the machinery, and the idler pulley was worn and wobbled and was not properly set on the shafting, and would wobble and otherwise carry the belt onto the fixed pulley, or by friction and negligent failure to oil would become heated and tighten on the shafting, thereby starting the machinery, and there were other defects in said machinery which caused it to start up and run and to make it dangerous, which were all unknown to the plaintiff and were not obvious." This cutter, which perforated the leather, worked

in a "die," and was fastened in place by a horizontal pin, inserted into the perpendicular rod, and upon this particular occasion Gammage claims that he had the cutter in his left hand, and was pressing upon the cutter into this perpendicular shaft with three of the main fingers of his left hand, with his thumb outside, pressing against the machine, and was in the act of inserting this connecting pin in order to fasten the cutter, when the machine started in some manner unknown to him, and with the downward stroke of the perpendicular rod and cutter upon the die below, amputated the three fingers holding the cutter; that his attention and vision were directed to the immediate work in hand of fastening the cutter to the rod, and as soon as the rod began to move his sense of sight and feeling informed him of that fact, and that he knew, of course, that it would cut his fingers off if it struck the die. He testified that when he began his employment he was instructed by an employé, to whom he was referred by the superintendent of the plant, how to adjust the cutter to the rod, and this instruction was the same method used by him when injured, and that he was not warned of any defect in the machinery, or instructed any differently as to any other method of adjusting the cutter, which is not denied in this record. Plaintiff had been in the service of the appellant company nine days when injured, however, not working upon this particular machine the whole period, but just the length of time he operated it is not definitely stated; and he stated that during that period no other person, so far as he knew, ever operated the machine, and that he had never heard or knew of the machine starting without the belt having been shifted to the tight pulley, or the flywheel having been moved, and further said, "Before the time I was injured, it had always responded and worked all right—responded to the shifter." Upon this particular occasion he says he had not worked upon this machine for about two days, and the same was at rest, and that he saw when he went to the machine that the belt was upon the idler pulley, and when he was inserting the pin for the purpose of fastening the cutter onto the rod, he was facing in the direction of the balance wheel, and did not have occasion to move the connecting rod so as to get into position for insertion; that "he found it exactly in the position he wanted it"; that when the connecting rod was in the right position to insert the cutter and key, it leaves a space between four and five inches from the die below to the cutter above, and that he would have that much space less his fingers between the two objects.

In conformity with his pleadings, the plaintiff in this case introduced one W. R. Kirby, an expert witness, who qualified himself as an erecting engineer, and machinist, and familiar with this character of machinery, and who testified that if the machinery was in proper condition and correctly constructed, you could not start it except by using the shifter or flywheel, and if it started in any other manner, it was defective. He testified to three defects, which "could exist that could start the machine if a man did not throw the shifter or turn the balance wheel": First, that the shifter might be out of plumb (out of balance) and lean against the belt, and the loose belt, touching the shifter, with the weight of the same traveling, and the pressure against it, towards the tight pulley, would cause the belt to crawl to the tight pulley, and when the contact was sufficient with the belt on the tight pulley, the machine would start; second, he says the shaft upon which the pulleys operate has a collar at each end outside the bearings, which work endways, and if this collar worked loose it would permit the tight pulley to move along the shaft and get under the belt and start the machine; and, third, from lack of oil the loose pulley and shaft, on account of the friction, might become heated and stick—become a tight pulley so to speak—and start the machine. He testified he had known all three defects to occur in the operation of machinery, and as to the second defect, he said the remedy to apply would be to slide the shaft back and tighten the collar, "so that the tight pulley cannot get under the belt," and further said, "You could not get the machine to run right until you fixed it; you have to fix the machine." As to remedying the third defect, he said: "When from lack of oil a shaft and a loose pulley would get hot and swell, so the loose pulley would grip the shaft instead of turning on it, * * * you would have to take the pulley off the place where it is heated, dress the shaft, and oil the pulley * * * until the pulley will turn free again."

[1] The evidence in this case is totally lacking of any proof of actual knowledge of any defect in this machine; the affirmative proof is to the contrary, and the liability of the master must be based upon a proposition in law that, if defective, he could have discovered the defect by the exercise of ordinary care—it must come within the rule where, under the circumstances shown, the accident presumably should not have happened if due care with reference to inspection had been exercised. Labatt on Master & Servant expressed the rule in ordinary cases that "the positive branch of the rule which expresses the significance of the fact that the abnormal condition had existed previously to the accident may be stated as follows: Where the instrumentality which caused the injury was in an unsafe condition so long before the accident happened that the master would have discovered such unsafety if he had been in the exercise of reasonable care, he stands, as regards liability, in the same predicament as if he had actually known of the defects." Volume 1, § 132, p. 280.

There should be a limitation at some

point, of course, bottomed upon the facts of each particular case, where a court can say the evidence is not sufficient. In the case of Gulf, Colorado & Santa Fé Ry. Co. v. Pettis, 69 Tex. 689, s. c., 7 S. W. 93, the Supreme Court, although holding the master liable upon other grounds, held that where the passage of a preceding train tore up a reasonably safe and sound track, and rendered it defective an hour before another train was wrecked, the master could not be held liable, involving the corollary that a reasonable system of inspection, if made with that degree of care obligatory in such matters, could not have discovered such a defect, and the injury and accident avoided. We presume, of course, that appellee, in reality bottoms his case upon the doctrine of res ipsa loquitur, the thing speaks for itself, and which from the citation of authorities in the Hayden Case, 29 Tex. Civ. App. 280, 68 S. W. 530, we deduce that the Court of Civil Appeals pertinently applied the same rule, although the facts there were not as developed and as significant as to the exculpation of the master as here. "Where the particular thing causing the injury has been shown to be under the management of the defendant or its servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, *in the absence of explanation*, that the accident arose from want of care." Ry. Co. v. Suggs, 62 Tex. 323, and the doctrine is well illustrated in the case of McCray v. Railroad Co., 89 Tex. 170, 34 S. W. 95. In ordinary cases where res ipsa loquitur does not apply, the servant is not entitled to have his case go to the jury unless he introduces in addition to the fact of the occurrence of the accident some testimony which fairly tends to show that the employer *was guilty of negligence*, and cases within the above rule merely shift the burden of proof.

"The doctrine * * * simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him, if any there be, and relieves the plaintiff from the burden of proving the nonexistence of an adequate explanation or excuse." Bienz v. Unger et al., 64 N. J. Law, 600, 46 Atl. 595. That case was one where a trip hammer had fallen in some unaccountable manner, without the action of the plaintiff. In that case it is true that the machine, after the accident, had been scrutinized, and prior to the time of the accident had exhibited defects which, upon explanation, the court concluded on account of having been remedied were not the proximate cause of the particular occurrence, and in the same opinion the same judge says: "Indeed it cannot be seriously contended that at the close of the case any one could say what caused the machine to act as it is said to have done, still less to indicate what part of it was defective or out of order, or whether any part of it was"— and further announces: "There is no such thing as 'negligence at large.' This is not one of those cases in which the plaintiff, in default of proof of the particular in which the defendants were negligent, may point to the occurrence by which he was injured, and say that this, of itself, made the probability that the defendants had acted carelessly of greater weight than the presumption that they had not, which is the doctrine called 'res ipsa loquitur.' In the present case 'res ipsa,' viz., the behavior of the machine as described by the plaintiff, does not with any greater weight of probability suggest negligent conduct attributable to the defendants than it does mechanical errancy unknown to them."

The case of Stackpole v. Wray, 74 App. Div. 311, 77 N. Y. Supp. 634, discloses the sudden fall of an elevator due from a defective bolt, which was broken, and the court said: "The witness who examined this bolt and cap immediately after the accident testified that there was no exterior evidence of weakness of the bolt or cap. The break indicated that it had been torn apart a half to three-quarters of an inch inside the frame, leaving a ragged edge; that there was no indication on the external surface of the bolt that it was liable to break; and none of the witnesses could say that, if the cap had been removed and the bolt inspected, they would have been able to discover any defect in the bolt. There was no direct evidence as to what caused this elevator to fall, but the jury would have been justified in inferring that the breaking of this bolt caused the shift to drop out of gear, * * * which would cause the elevator to fall. There was evidence, which was not disputed, that the machine at the time of the accident was in apparent good order; * * * that it was properly constructed, with a safety clutch underneath the car. * * * The plaintiff stated upon the trial that he relied solely upon the evidence of a lack of inspection of the machinery connected with the elevator to sustain a recovery, and there was evidence to justify a finding that there had been no inspection of this elevator since it was in use. That it is the duty of one maintaining a machine of this character for the use of his employés to properly inspect it, so as to discover and repair any defect in it, cannot be disputed; but, to sustain a recovery upon the ground that a failure to inspect was negligence, there must be evidence to justify a finding *that the neglect to inspect the elevator was the proximate cause of the injury*."

The plaintiff and appellee in this case has seen fit to plead specific defects, with a general allegation of other defects, as to the cause of the starting of the machine, and we are inclined to think should be confined to those specially pleaded; whether or not this is true, at any rate he has assumed the burden of proving the defects, which, either one or the other (necessarily conjectural and spec-

ulative), was the proximate cause of the injury. The development of the facts of this case, stronger than the facts in the Hayden Case, with the character of the pleadings in this case, differentiate it from the case of Railway Company v. Hayden, which was similar upon the facts; but there the accident spoke for itself, without any evidence ascertainable from the opinion in that case of any facts whatever in defense of the master. Res ipsa loquitur cannot apply with the full significance of the thing speaking for itself, where from the development of the whole case it projects the culpability into "negligence at large," where you are unable to infer or grasp it; and in this case we are unable to ascertain from this record the culpability of the appellant as the proximate cause of this injury, even if we assume that there was dereliction of the master in the matter of inspection; if the evidence is in such condition that even if the master had exercised the care that a typically prudent person should have exercised, and places the matter in that domain of conjecture, and doubt, not sufficient to warrant a reasonable belief of the existence of the fact which is sought to be inferred, the plaintiff fails. The necessary fact to be inferred here is that the Gamer Company could have discovered a defect which caused the starting of the machine, and all the testimony, including that of the plaintiff in the case, is that this machine, prior to the momentary act of injury, worked in a proper manner, and that immediately after the accident the belt was working properly on the loose pulley, and at all times thereafter (it is true from the defendant and his witnesses) it continued to behave properly. The defect conjecturally brought forward by Kirby, the expert witness, with reference to the heating of the loose pulley and shaft, and the other defect in regard to the tight pulley working under the belt, as conditions which were existent as the proximate cause of this injury, in the face of the countervailing proof, are unreasonable. The witness Gorman, who rushed to the assistance of plaintiff when he heard his cry, testified that when he got there he looked at the shifter and saw nothing unusual whatever about the machinery, and the loose pulley with the belt thereon was running in the usual manner, and although having been employed by the Gamer Company for a considerable length of time, he had never heard or seen this machinery started in any other manner than by the flywheel or the shifter.

In the Stackpole-Wray Case, supra, the court further said: "The plaintiff in this case did not content himself by simply proving the accident, and asking for the submission of the question to the jury in the absence of evidence by the defendant, but called witnesses to prove the cause of the accident, and from their testimony these facts (above mentioned by us) were proved. Assuming that in this case, in the absence of any ex-

planation, the fact of the accident would be evidence of probative force sufficient to require the question of defendant's negligence to be submitted to the jury, the question then presented is whether, upon all the testimony on the case, there was evidence to justify a finding that the accident happened from any negligence of the defendant. * * * What did he omit to do that a prudent person would do, which, if done, would have prevented this accident? There is no evidence that an inspection would have detected a weakness in the bolt, from which it could be inferred that it was liable to break. * * * And it seems to me, from the undisputed testimony of witnesses produced by the plaintiff, that any inference that the jury would be justified in drawing from the happening of the accident, unexplained, was disproved, and that it clearly appeared that the accident happened without negligence of the defendant."

As to the duty of inspection and the evidential prerequisites to the maintenance of an action based on failure to inspect, Labatt on Master & Servant, vol. 1, § 155, puts it interrogatively, "whether conditions which caused the injury were discoverable by an examination of a reasonably careful character?" Appellee may say that some of this testimony is from the defendant, and the fact that the plaintiff without dispute testified he never touched the shifter or the balance wheel is a contradiction by inference of the testimony of the defendant and his witness that this machine was in good repair, and that it maintained this condition at all times. The announcement of this principle is often true, but there is some discretion, even with a higher court, where all the testimony combining the plaintiff's and the defendant's is such as not to warrant the existence of a reasonable belief of the proof of a fact, and may be considered.

The plaintiff testified: "I had worked with this machine about nine days before I got hurt, except two or three days I was not working upon it. * * * I might have testified at the former trial of this case that, 'Immediately after the accident the belt was on the loose pulley, and the belt was moving and the machine was still. I believe that is a fact'; that is my testimony now." A witness may know a fact, notwithstanding the condition of his mind at the time, and we do not regard this as an idle statement, although the surroundings were not conducive to observation. The expert witness, Kirby, testifying for plaintiff, makes it very persuasive, corroborated by Gamer, that the two defects mentioned in the face of the opposing conditions here, is more consistent, or at least, just as much so, of the fact of their nonexistence as of their existence. If the tight pulley worked under the loose pulley, and the shaft working endways, and once started upon the path towards the loose pulley, or the loose pulley to the tight pulley, it

is more reasonable that an immediate succession of the same happening would exist, which is found not to exist in this record; the loose pulley, immediately after working smoothly with the belt upon the same, is so much more compatible with the existence of the other fact sought to be inferred as to place it in the domain of doubt and conjecture. It is uncontroverted that the tight pulley was a crown pulley, higher in the center of the circumference of the pulley and sloping to the rim of the same on each side of it, and that when the belt once started upon the tight pulley, in obedience to a physical law, would continue to climb until it covered the pulley. Kirby says it could strike an obstruction and the belt would shift back to the loose pulley; he does not say what kind of an obstruction, whether an iron rod, a cottonwood stick, or a man's fingers. The physical fact is that when the belt began to move to the tight pulley it accelerated the force as it began to climb, added to by the downward stroke, along with gravity after it got over the center, which is bound to have occurred in this instance before it struck the die below, and assisted by the flywheel, which Kirby says "has made a good many revolutions while the plunger is coming down to the die"—make his testimony valueless. The highest elevation from the die is six inches, and the point where Gammage says the machine started (the place where the fastening was required to be made) was 4 to 4½ inches from the die, which is corroborated by Gamer. Kirby further says: "If it is off of the center the least bit it would come down a whole lot easier than it would if it was just exactly on the center, because you have to start the whole load, and when you come over the weight or gravity of this load would be in favor of coming down, so it would take less energy to start it down on the tight pulley." The plaintiff says that the stroke of this descending rod was so quick that he was unable to jerk the three fingers from the machine within the space of 4 or 4½ inches.

In the case of Redmond v. Delta Lumber Co., 96 Mich. 546, 55 N. W. 1005, the Supreme Court of Michigan, "plaintiff's counsel contends that the failure of the machine to stop when the lever was released raises a presumption of negligence, thereby making it necessary for defendant to show an absence of negligence upon its part. On the other hand, the defendant maintains that plaintiff's failure to release the lever caused the accident. Proof was offered to the effect that the jack worked properly immediately after the accident, and the plaintiff himself testifies that it had worked properly for 60 days before and up to the time when he was hurt, when it suddenly failed to respond to the release of the lever. No proof was offered which tended to show that the machine was out of repair, unless the testimony that it failed to work was such proof. Counsel

for plaintiff contends that, if the jury should find that the accident resulted from failure of the machine to respond to the release of the lever, it necessarily follows that it was from abnormal causes, and that in such case the law presumes negligence, and the onus is upon the defendant to show the cause of this accident, or at least if it was not due to its fault." It may be true that a close reading of this case and of others does not seem to give full significance to the rule of res ipsa; however, in each case the court based its decision upon a development of the facts, which placed the negligence or imputed culpability at large to such an extent as that it would have to be decided by "guesses or conjecture."

Our Supreme Court, in the cause of Texas & Pacific Railway Company v. Kowsikowski, 103 Tex. 175, 125 S. W. 4, although it held that the rule did not fully apply to that case, used this significant language: "It is said by the Court of Civil Appeals that the action of deceased with reference to the east switch point shows that it was defective or out of order in some way. All that his action indicates is that the switch point did not work as it should have done at that time. Does that justify an inference of negligence on the part of the defendant? Is it not the reasonable inference that the switch had been satisfactory up to that moment? * * * No one can say from this evidence, therefore, that this switch point had ever failed to work properly, except at the moment before the derailment came," etc.—holding that where the facts were consistent with other hypotheses would exculpate the defendant, and the plaintiff could not recover.

Even if the concession had to be made that the shifter was out of line at the very time the injury is shown to have occurred in this case, in the face of other facts, however, we cannot see how there could be an inference of a necessary finding that the defendant in this case could have in any way, by the exercise of ordinary care, discovered the defect hypothetically assumed by the plaintiff to have existed. Which of these three things can a jury say did exist, and which did the defendant have to discover? It is true that the witness Kirby said that by the exercise of reasonable diligence a master could discover either one of the defects mentioned by him, a pronouncement of a principle of law compounded with a question of fact which, even if the testimony were admissible, is no more, if as much, as a scintilla in this case to prove the existence of any fact. We invite a careful reading of Railway v. Thompson, 11 Tex. Civ. App. 658, 33 S. W. 718; H. & T. C. v. Barrager, 14 S. W. 242; Gulf, C. & S. F. Ry. Co. v. Kizziah, 86 Tex. 81, 23 S. W. 581; T. & P. Ry. Co. v. Endsley, 103 Tex. 434, 129 S. W. 343—analogous on this question.

We think the negligence, in this case, of

the defendant, when you take all the testimony, at the close of the case was still "at large"; and, this cause having been tried in the district court three times, we reverse and render, without remanding, which is accordingly ordered.

### On Motion for Rehearing.

Appellee's counsel in this cause have filed an extensive and able argument on motion for rehearing, contending that we erred, in our original disposition of this cause, in reversing and rendering same in favor of appellant. Appellee, is insisting that he did not rely upon the doctrine of res ipsa loquitur, "as the court seems to assume in its opinion, but appellee contended, and now contends, that there is an abundance of evidence of appellant's negligence to warrant the trial court submitting the issue to the jury," further saying, however, that if they were relying upon such a doctrine, the issue of negligence should have been submitted to the jury, and the jury's verdict should be sustained by this court. It is noted that in the petition in this cause, upon which the appellee went to trial, he specifically alleged, three defects of the machinery operated by Gammage, either of which existed as negligence of the appellant, causing the injury. Chief Justice Wilson, in the case of Gulf Pipe Line Co. v. Brymer, 124 S. W. 1009, said: "We are of the opinion that that maxim [res ipsa loquitur] was not applicable, because in his pleadings appellee charged as the negligence he relied upon specific acts and omissions on the part of appellant." The case of Price v. Ry. Co., 220 Mo. 435, 119 S. W. 938, 132 Am. St. Rep. 588, by the Supreme Court of Missouri, and also cited by Chief Justice Wilson, is one where the pleading of the plaintiff was of specific acts of negligence, and that court said a case of that character "rises to the dignity of an admission of record that she [the plaintiff] knew the cause of the accident." Justice Neill said in the case of Brewing Company v. Willie, 52 Tex. Civ. App. 559, 114 S. W. 191: "This is not a case where the doctrine of res ipsa loquitur applies; for the plaintiff, having specifically alleged the acts of defendant's negligence, cannot make out a prima facie case without direct proof of actionable negligence, but he must prove the acts of negligence which he averred, and that such negligence was the proximate cause of his injury." Also, see, Stackpole v. Wray, 77 App. Div. 310, 77 N. Y. Supp. 634; Kennedy v. Ry. Co., 128 Mo. App. 297, 107 S. W. 17.

[2] We believe appellee, having pleaded three hypothetical defects in the machinery, either of which was alleged as the cause of the injury to him in this instance, he was confined to proof of those specific defects, and those only were the ones appellant would be required to meet with reference to his negligence.

We decided this case upon what we conceived to be a universal and simple rule of law; that is, "there must be evidence fairly tending to show either that the defendant knew of the existence of the defect, or that, in the exercise of reasonable and ordinary care and diligence, the defect could have been discovered before the accident." Mo. Pac. Ry. Co. v. Dorr, 73 Kan. 489, 85 Pac. 534. As a general proposition, of course, this doctrine is undisputed, and is authoritatively recognized by the courts of our state, as indicated by the following cases: Ry. Co. v. Edmunds, 26 S. W. 633; Texas Pacific Railway Co. v. Wisenor, 66 Tex. 674, 2 S. W. 667; Gulf, etc., Ry. Co. v. Silliphant, 70 Tex. 623, 8 S. W. 673; Denham v. Trinity Lumber Co., 73 Tex. 78-83, 11 S. W. 151; San Antonio, etc., Ry. Co. v. Hahl, 83 S. W. 27; Eddy v. Prentice, 8 Tex. Civ. App. 58, 27 S. W. 1063; Ry. Co. v. McMamara, 59 Tex. 255-259.

The Supreme Court of Kansas, in the case of Ry. Co. v. Dorr, supra, as reflected by the syllabus in the opinion, said that: "Before an employé of a railroad company can recover from the company for injuries resulting from a defective appliance on a locomotive, of which defect the railroad company had no actual knowledge, he must show that it had existed for such length of time that the company should have discovered and remedied it." Unless in cases where the attending circumstances and conditions are such that prima facie negligence by the assertion and proof of those circumstances is presumed, as in the rule of res ipsa loquitur, knowledge as an element of liability, where the servant sues the master, is as elementary in the jurisprudence of this country as any other principle of law.

As Labatt put it in another form (volume 3, Master & Servant [2d Ed.] § 1032): "Viewed as embodying a principle which is exculpatory in its operation, the rule is sometimes stated in the form that the master is not liable for an injury caused by defects, unless he had actual knowledge of such defects, or they had existed for such length of time that knowledge might be inferred" (citing numerous cases). While it is true that there are some cases which are rather inclined to the proposition that, where inspection is not shown, it is an element of negligence—loose language without any regard whatever for the rule with reference to the burden of proof upon plaintiff, and jumping the rule that in order to constitute liability where actual knowledge is not proven, defendant by the exercise of ordinary care could have found the defect, and without any regard for the proposition that in order to show inspection as an element of negligence, the plaintiff should show something to inspect before its invocation, some condition or suggestive circumstance that inspection could grasp. "Notice or knowledge cannot be presumed unless the duration and character of the defect were such as should

have been discovered by the railroad company by the exercise of ordinary care and diligence." Ry. Co. v. Dorr, supra. If the attending circumstances are such that the defect induces a reasonable belief that it existed for some length of time prior to the happening of the accident, inspection and the duty of ordinary care to discover necessarily applies. The books are full of cases where the period which elapsed between the accident and when the instrumentality was proved to have been in a very unsafe condition was very brief. The courts have deemed themselves warranted in saying as a matter of law that notice could not be imputed to the master. "All that can, with safety, be affirmed in this connection is that the longer the period the more conclusive will the finding of a jury be deemed." Labatt, same section, same volume, p. 2733. Appellee is evidently impressed with this rule for the reason that he placed an expert witness upon the stand for the purpose of eliciting testimony from him in substance that proper inspection, by the exercise of reasonable diligence, would have disclosed either of the three defects mentioned by him which could have caused the accident, notwithstanding that the attending circumstances in this case were not such as to indicate any length of time whatever prior to the time of the accident that either of the three defects mentioned by him had existed, no suggestive circumstance of the condition of the machinery, except the drop of the cutter, that a defect did exist upon which his expert testimony could operate, with the countervailing testimony in the record pointing strongly to an unexpected and sudden occurrence, and as to make his conclusion of law, compounded with one of fact, to our minds absolutely valueless.

White, in his work on Personal Injuries on Railroads, vol. 1, § 79, says: "It being not only essential to show the defect from which the injuries resulted, but also the fact that defendant had knowledge thereof a sufficient length of time to have enabled him, in the exercise of due care, to have repaired it, or that it had existed for a length of time sufficient for him to have acquired such knowledge in the exercise of ordinary care, these facts must also appear before a prima facie case is established by the plaintiff. But the law will imply notice from a defect that has existed a sufficient length of time for the employer, in the exercise of ordinary care, to have discovered the defect; hence it is not essential in every case to prove actual notice, provided facts are shown from which notice can be legally inferred."

Appellee calls to our attention the case of Pope v. Railway Company, 155 S. W. 1175, decided by Chief Justice Brown, the case of Gulf, Colorado & Santa Fé v. Larkin, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944, decided by Justice Denman of the Supreme Court, also the case of Gulf, Colorado & Santa Fé Ry. Co. v. Wood, 63 S. W.

164, and a leading case in this state decided by Justice Brown (McCray v. Ry. Co., 89 Tex. 168, 34 S. W. 95). In reading the opinion in the Pope Case, supra, which arose on account of a sliver flying from the head of a battered chisel, striking Pope in the eye, we find one of the two questions, determining the rights and liabilities of the parties, as follows: "Was the defendant guilty of negligence in furnishing to its employés the chisel in its battered condition and in the manner it did by placing it in the box containing other chisels for the employés to select from?" The court said that this was one of the questions of fact which should have been submitted to the jury, which the trial court did not do. · The Drake Case, decided by Justice Denman, was one with reference to the furnishing of a simple hook by the railroad company, to be used by plaintiff in loading rails upon cars, which hook was defective, and in which case Justice Denman draws the distinction between the principle enunciated there and the one declared in the case of Railway Company v. Larkin, where the matter of inspection of a simple appliance—that is a lantern—under the control of the employé, was involved. Neither of those cases, properly sounded, applies here.

The leading case of McCray v. Ry. Co., by Justice Brown, of the Supreme Court, is squarely on the doctrine of res ipsa loquitur. A steel rail fell from a flat car, one end of which struck the ground and the other resting on the side of the car, "swept the whole north side of the train," striking the brakeman, the husband of the plaintiff, and killing him instantly. Justice Brown said: "The loading of the rails was done by it (the defendant) or its servants; and if the accident was such that it would not probably have occurred, in the ordinary course of transportation, if the car had been properly loaded, the circumstances attending the accident would furnish sufficient evidence to authorize a verdict for the plaintiffs if no explanations were given by the defendant." 89 Tex. 172, 34 S. W. 97. Justice Brown in that case, refers to the old English case of Byrne v. Boadle, 2 Hurl. & Co., p. 726—a leading case illustrative of the doctrine of this maxim— where a barrel rolled out of a warehouse upon the sidewalk and injured the plaintiff. "A barrel could not roll out of a warehouse without some negligence," suggestive of itself that a barrel (we believe usually round) might roll unless "scotched." The case of Gulf, Colorado & Santa Fé Ry. Co. v. Wood, supra, following the McCray Case, was one with reference to a lump of coal which suddenly fell from the tender of the engine, striking an employé in close proximity to same, and in reading the opinion negligence on the part of those having control of this object in either the loading of it, or the engineer and fireman in not properly taking care of the coal after having been loaded.

These are manifestations expressive of a negligent act from the beginning, or negligence while under the direct control of another agent of the master, arguing a causal connection with no hiatus to be bridged in the logic by the aid of the attending circumstances, and could be a proximate cause of the injury.

We find cases where it is shown that an appliance has become defective by continued wear, and it is not necessary, in an action for injuries caused thereby, to prove that the master had notice of such condition; he is required to take notice of the physical law of the wear and tear of machinery, and constructive notice is the result. The case of Ry. Co. v. Silliphant, 70 Tex. 623, 8 S. W. 673 (formerly cited by us upon the doctrine of ordinary care), indicates this principle, and was a case where the evidence showed that an appliance, a lever, was of pine timber, and showed decay and a partial break. Justice Gaines said: "Experience in using such instruments should indicate something of the probable effects of use, exposure, and time, or a combination of them, upon their strength, and when they would likely become unsafe." The master is necessarily required to know that inanimate objects are subject to deterioration in quality, of course the period of time suggesting notice, longer or shorter, according to the character of the appliance, the manner of its use, and the nature of the material; hence a jury question. On the main point Labatt, vol. 3 (2d Ed.) p. 2719, Master & Servant, says that: "Cases are not wanting in which the principle that fault cannot be imputed to the master unless he had notice of the existence of the conditions from which the servant's injury resulted seems to have been ignored, and liability imposed upon evidence which merely showed that those conditions existed"—and cites as Texas cases the case of McCray v. Railway Company, supra, also Bonner v. Glenn, 79 Tex. 531, 15 S. W. 572; Ry. Co. v. Taylor, 79 Tex. 104, 14 S. W. 918, 23 Am. St. Rep. 316; Ry. Co. v. White, 82 Tex. 543, 18 S. W. 478; Ry. Co. v. Crow, 3 Tex. Civ. App. 266, 22 S. W. 928, and referring to other cases not necessary to mention. Our quotations from this work and its general excellence does not preclude us from criticism of this note and annotation, for the reason that the annotator did not sound the cases nor analyze the facts sufficiently. The McCray Case by Justice Brown of the Supreme Court, as stated, is squarely on the doctrine of res ipsa loquitur. The attending circumstances and the condition suggest negligence ab initio. The case of Railway Co. v. Taylor, supra, was one involving a bad track near a bridge, which "had been in bad order about a month," and there was proof of actual notice, not only to the roadmaster of the railroad, but to the foreman of the section. The case of Bonner v. Glenn, supra, presented a condition of a defective platform upon which plaintiff was standing when a collision occurred; the other operatives were attempting to make a train connection, struck the platform, causing the same to give way, and the jury evidently found that the "sills upon which the platform rested were rotten"; it takes quite a while for timber to become rotten in any country, necessarily imputing notice of its condition by lapse of time, coming squarely within the rule of the Silliphant Case, supra, decided by Justice Gaines. The case of Texas & Pacific Railway Company v. White, decided by Justice Fisher of the Commission of Appeals, involved a condition of an underhanging brake beam which was three inches from the rails when it should have hung six inches, and on account of this defect a brakeman, when making a coupling, caught his foot in said defective brake beam, clearly presenting a negligent act of the railroad company or its agent when the brake beam was attached. The case of Railway Co. v. Crow, supra, involved a defective water spout, which had been out of repair for three months, and the defendant had actual knowledge of its defective condition.

To revert to the main issue, we think that the case of M., K. & T. Ry. Co. v. Thompson, 11 Tex. Civ. App. 660–663, 33 S. W. 718, 720, on the matter of the accident, defect, and injury suggestive of negligence, is quite analogous, and we believe to announce the correct doctrine. The brakeman in that case was in the act of pulling a pin between two cars on the track. Chief Justice Lightfoot, in that case, held that the jury were justified in drawing the inference that the pin, drawhead, or coupling apparatus was defective. However, he further said: "But, even if this was true, they would not have been justified in drawing from such inference the further inference that such link, pin, drawhead, or other coupling apparatus had been in that condition a sufficient length of time to justify the conclusion of negligence on the part of the company. There was no evidence showing or tending to show how long the pin had been in that condition, the cause, or that the company or its officers knew of it, or that by the use of ordinary care they could have known it. The mere fact that the pin was fastened in the drawhead would not, of itself, be sufficient to establish negligence on the part of the company. * * * The jury could not, from the mere fact that the pin stuck in the drawhead, draw the inference that the apparatus was defective, and then base upon that the further inference that the officers of the company knew it, or by the use of ordinary care could have known of it, and that hence the company was negligent. This would be basing one inference upon another, which cannot be done. The substantive fact necessary to be established was that

the company was negligent. * * * We have the fact that the pin stuck in the drawhead; how it happened to stick there was not shown; how long it had been in that condition was not shown; that the company knew of it, or could have known, was not shown. We are asked to presume that the pin stuck by reason of a defect, and to further presume that such defect was known by the company." Chief Justice Lightfoot applies the fundamental rule that a presumption cannot with safety be drawn from a presumption; there being no fixed or ascertained fact from which an inference of fact might be drawn and none is drawn.

The case of Railway Company v. Barrager, 14 S. W. 242, by the Supreme Court of the state, was one involving a defective drawhead, and Justice Gaines said: "If there was any negligence in the company which caused the drawhead to pull out, it was not proved. To say that the burden is upon the servant to show negligence upon the part of the master when he seeks to recover damages for injuries resulting from defective machinery is but to announce the elementary proposition that the plaintiff must prove his case; and we are of opinion that negligence on the part of a railroad company is not to be inferred from the mere fact that a drawhead has become detached in the operation of moving the train. R. R. Co. v. Thomas, 42 Ala. 672. So that it seems to us that upon his main proposition plaintiff has failed in his case." In the case of Gulf, Colorado & Santa Fé Ry. v. Kizziah, 86 Tex. 89, 23 S. W. 581, by Chief Justice Brown, there is a repetition by the Supreme Court: "That negligence on the part of the railroad company is not to be inferred from the mere fact that a drawhead has become detached in the operation of a moving train."

The case of Texas & Pacific Railway Co. v. Endsley, 103 Tex. 435, 129 S. W. 342, was one where Endsley, a licensee, contended that he was struck by a swinging door of one of the box cars of the defendant; although the testimony was rather meager on this proposition, Chief Justice Brown treated it in this manner: "But if we concede that Endsley's statement is correct, we yet have the question, Is it sufficient as a matter of law to support the judgment? The fact that the injury occurred, and that such injury resulted from a defective condition of the defendant's car, is not sufficient to establish the necessary fact that the railroad company was negligent in permitting the door to be in that condition" (citing the Kizziah Case, the Barrager Case, and the case of Railway Co. v. Thompson, by Chief Justice Lightfoot, supra)—and, again quoting from the Barrager Case, by Justice Gaines, as applicable by analogy to the swinging door, "that negligence on the part of a railroad company is not to be inferred from the mere fact that a

drawhead has become detached in the operation of a moving train."

Appellee may say that the analogy does not exist between those cases and the one at bar; that here we prove by an expert witness that, because this machinery acted in the manner in which it did, there were three defects which could have existed, and because, forsooth, this same witness said that the master could, by the exercise of reasonable diligence, have discovered either one of the three defects, by proper inspection, the master is shown to have been negligent. In other words, we show as a substantive fact that Gammage did not touch the machine, hence a defect, an inference from the fact that Gammage says he never touched it. After showing this inference, an expert witness, upon the inference that it started itself, says that either of three defects might or could have caused the accident. Having shown that either three defects might or could have caused the accident, he further infers that a reasonably prudent man, by the exercise of reasonable diligence, could have discovered the defect. We believe the assertion of such logic argues its fallacy by its mere presentation. Stripped of all false logic, we believe that the only thing shown in this case with any degree of probative force is that a defect may have been existent. If we are wrong in this respect, and the three hypothetical defects, suggested by Kirby, the expert witness, could follow as a logical sequence from the conditions surrounding the accident, still, however, we have this condition: The machinery suddenly started. An expert witness reasons, that being so, it could have been caused by one of three defects—of course he is unable to say which. That being so, the master could have discovered the same by the exercise of reasonable diligence.

The appellee has cited numerous cases, some from Massachusetts and from other states as to the sudden starting of machinery, proving negligence. We believe, without exception, unless it is the case of Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149, cited, when carefully read, suggest some condition, some additional circumstance, upon which the court acted and grasped as affirmative proof of negligence. The case of Ryan v. Fall River Iron Works Co., 200 Mass. 188, 86 N. E. 311, where some loose language is used in regard to proof of negligence against the master, exhibits a circumstance, slight it is true, which the court grasps in order to uphold the doctrine of negligence, and the very cases Justice Rugg recites as upholding the position that the starting of the machine of itself is some evidence of a defective condition (which we do not deny), do not bear him out as to the further proposition of proof of negligence, which is a broader and deeper proposition; that judge citing Gregory v.

American Thread Co., 187 Mass. 239, 72 N. E. 962; Coleman v. Mechanics' Iron Foundry Co., 168 Mass. 254, 46 N. E. 1065; White v. Boston & A. R. Co., 144 Mass. 404, 11 N. E. 552. The courts of that state, we believe upon a careful reading of the opinions, have "shied" from the doctrine; that is, that mere proof of that fact alone, the sudden starting of a machine, while it may be proof of a defect, is proof of negligence. As Justice Rugg says, in most of the cases of automatic starting of machines from a state of rest, "there has been evidence of a previous starting, with notice of which the defendant might have been charged," and in the very case he decides in which this language is used, there was other evidence of negligence besides the mere starting.

If this machine started from a defect which could not have been discovered by the exercise of ordinary care, of course appellee must admit that he has failed to prove his case. If the evidence upon the whole case is more compatible with the proposition that the start was a sudden one, which the employer could not foresee, and for which he could not be held in negligence, we are unable to see how appellee can recover. He says we should not consider the testimony of Gamer and Gorman, notwithstanding it travels with that of Gammage on parallel lines, to the extent of the knowledge of each. Such a consideration is not one of resolving a conflict, but one, in some cases, involving whether proof of a case is made. All the real testimony shows that this machine was never known to behave in this manner either before or after the accident. "There cannot be a recovery against a master for the personal injury of an employé where there is no evidence from which it can be determined which of several possible causes, some of which do not involve negligence of the master, produced the injury." Syllabus of the opinion, Kenneson v. West End St. Ry. Co., 168 Mass. 1, 46 N. E. 114. Justice Holmes (then upon the Massachusetts Supreme Court) said in that case: "What caused the car to start is wholly uncertain. See Ross v. Cordage Co., 164 Mass. 257, 41 N. E. 284 [49 Am. St. Rep. 459]. It is suggested that the car was defective, but there is no satisfactory evidence that it was, or, if it was, that the defect was or ought to have been known to the defendant, or that it was of such a nature as to be likely to cause the start." The production of the evidence, on physical facts, of the plaintiff, is not in the slightest inconsistent upon this point with the corroborative testimony of Gamer and Gorman, and make it as much, if not more, consistent with the theory that it was a sudden starting, and that, if a defect, the master could not have known of it, than the theory contended for by the appellee.

We overrule the motion for rehearing.